183 N.J. Super. 558 (1982)
444 A.2d 1123
STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF,
v.
WILLIAM C. ROWLAND, LOUISE H. ROWLAND, GUARANTEE BANK, A CORPORATION OF NEW JERSEY, PAUL SEBAN, EVELYN SEBAN, AMERICAN APPLIANCE, A DEFUNCT CORPORATION OF NEW JERSEY, GENERAL ELECTRIC CREDIT CORPORATION, A CORPORATION OF NEW YORK, TOWNSHIP OF EGG HARBOR, IN THE COUNTY OF ATLANTIC, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division Atlantic County.
Decided February 3, 1982.
*559 Dante J. Romanini, Deputy Attorney General, for plaintiff (James R. Zazzali, Attorney General of New Jersey, attorney).
Peter J. O'Connor for defendants Rowlands.
Eugene Tighe, Jr. for defendant Guarantee Bank (Koury, Tighe & Lapres, attorneys).
STEEDLE, Acting A.J.S.C.
This is an eminent domain case which presents the novel question to a New Jersey court as to the definition of the term "bona fide negotiations" found in the Eminent Domain Act of 1971, N.J.S.A. 20:3-6. After a review of all pleadings, briefs, exhibits and testimony, the following findings of fact have been determined.
Since 1968 defendant William Rowland owned and operated various appliance businesses. One of Rowland's businesses was the American Appliance store located on a traffic circle at the intersection of Tilton Road and U.S. Route 40-322 in Egg Harbor Township. On or about September 7, 1978 Rowland received a notification letter from the Division of Right of Way, New Jersey Department of Transportation (NJDOT), which indicated Rowland's property had to be purchased for a public *560 highway improvement at the traffic circle; that appraisers would visit Rowland's property and Rowland could accompany the appraisers during the survey of the property. The record does not reveal if Rowland did accompany the appraisers. The letter also indicated "negotiations" would ensue once NJDOT approved the appraisal. Upon receipt of this letter Rowland consulted attorney David Brandt, who told Rowland not to obtain an appraisal himself until after NJDOT submitted a written offer. The rationale for such advice was that the offer would assure that NJDOT was definitely going to take the property and that an early appraisal would be stale due to the rising market prices attributable to casino gambling in the nearby Atlantic City area.
On March 13, 1979 NJDOT contacted Rowland and a meeting was scheduled for March 16, 1979. On March 16, 1979 NJDOT negotiator Daniel Murphy was assigned to negotiate the Rowland case. The assignment indicated that negotiations were to be completed by April 20, 1979. Murphy was told that time was of the essence in these negotiations, due to the imminence of construction on the traffic circle. The target date for that construction was March 1, 1979, which obviously was past due at the time of Murphy's assignment. Testimony before this court revealed, in contradiction, that "1980" was the target date. Suffice it to say, there was not much time before the project would be initiated. One of many constraints imposed on the negotiator is that he is not permitted to change the price offered. Such change in the price could only be permitted through the negotiator's superiors upon review of the appraisal and request for a higher price.
On March 16, 1979 Rowland met with E.O. Sattin, District Supervisor of NJDOT, Murphy and Irving Praeger, Project Supervisor of NJDOT. At this meeting Rowland was presented with a written offer indicating an appraised value of the Rowland land for $196,000 and building for $224,000, thus totaling what NJDOT believed just compensation for the taking in the amount of $420,000. This letter also indicated that professional *561 appraisers had used the market sales, income and cost approaches in their valuation of the Rowland property. Murphy started to discuss the cost approach, but Rowland said he knew the cost, based on the estimates provided in connection with a new American Appliance store planned for the other side of the traffic circle. Murphy also proceeded to discuss the market approach, but Rowland cut him off and said that there were no sales of comparable properties due to the unique features of the Rowland property being sought by NJDOT. There was no discussion about the income approach at this meeting. Also, Rowland did not request, nor did Murphy provide, copies of the State's appraisal reports or disclose any of the comparable sales figures or underlying facts, e.g., dollar and value components, capitalization rates and rental income, upon which the appraisals were based. At the conclusion of this meeting Rowland indicated he wanted to contact Attorney Brandt about this case, and Murphy indicated he would "wait a while" and contact Rowland after Brandt was consulted. It is noteworthy that Sattin informed Rowland that time was of the essence and there was not much time in which to negotiate due to the imminence of construction.
On March 22, 1979 Murphy called Rowland and was informed that Rowland was still waiting to hear from Brandt. Murphy reminded Rowland of the time problem and requested that Brandt be contacted. Rowland stated he would comply with this request. On March 29, 1979 Murphy was in the area and stopped by Rowland's office; Rowland was not there. Later in the day Rowland called Murphy and indicated word should be coming that afternoon from Brandt. There was no discussion of the substantive aspects of the case during these phone calls.
On March 30, 1979 Murphy met with Rowland at Rowland's office. Rowland indicated that Brandt "was going to have a letter [presumably of representation] in the office" in three days. Murphy and Rowland then proceeded to talk about the case. The income approach, in particular economic rent value, was discussed. Rowland spoke of a business located in the *562 woods (not specified where) that was paid an economic rent of $5 a square foot and said that his property was worth twice that amount. This culminated in Rowland's "mentioning" the figure of $600,000 as value of his property, based on the use of the economic rent like income approach. Testimony before this court from Murphy indicates that the $600,000 figure was not a demand; however, the mentioned sum did give Murphy the impression that Rowland was not agreeable to the $420,000 offer made by NJDOT. In any event, Rowland did not request any comparable sales information or any additional information that was in the NJDOT's appraisals at this meeting. Also, up to this point, Rowland had not produced any appraisals or citations of errors, other than the use of economic rent, in the NJDOT's appraisals. At this point Murphy believed he had done everything possible that he could do and told Rowland that due to the imminence of construction legal proceedings would soon be started. Throughout the discussions with Rowland, Murphy got the impression that Rowland fully understood what was happening, based on Rowland's excellent business background and intelligent discussion about appraisals.
On April 2, 1979 Praeger sent Rowland a letter indicating that there was yet no acceptance of the NJDOT offer and asking Rowland to reconsider the offer and enter into an amicable settlement. The letter continued that unless NJDOT heard from Rowland in this regard within five days, the case would be forwarded to Trenton headquarters with a recommendation for condemnation. By April 9, 1979, the deadline date, no communication had been received from either Brandt or Rowland. On this same date Murphy filed his recommendation for condemnation report, which eventually reached Andrew Cella, Chief of the Bureau of Acquisitions of NJDOT. On April 27, 1979 Cella sent a letter to Rowland indicating that NJDOT believed its offer was fair, that the $600,000 figure mentioned to Murphy was excessive and that unless Rowland accepted the NJDOT offer within 14 days of the letter date (May 11, 1979) it would be assumed settlement by agreement could not be reached. On *563 April 30, 1979 Thomas Kondash, Condemnation Coordinator and Right of Way Negotiator, was assigned the Rowland case. It is Kondash's role to continue negotiations, once condemnation has been "authorized" (not necessarily predicated upon the filing of the complaint in condemnation).
Kondash called Rowland on May 2, 1979 and requested a meeting in order to continue negotiations. Rowland responded that he still had not retained Brandt and would get back in touch with Kondash. On May 8, 1979 James V. Hyde, Jr. wrote a verification, apparently based on the Murphy report or in anticipation of failure to settle by the end of the 14-day period, that bona fide negotiations took place and were successful. On May 10, 1979 Rowland informed Kondash that Peter O'Connor had been retained as Rowland's attorney. Kondash immediately called O'Connor and told him to send a letter of representation to NJDOT. There was no discussion between either Rowland or O'Connor and Kondash relative to acceptance of the offer or any counter-offer during the above time period. Kondash did not notify his superior of O'Connor's representation in the case.
The deadline date for acceptance of the offer was May 11, 1979. On this date O'Connor wrote to Kondash and requested an extension of the 14-day period (which Kondash was not authorized to grant) and copies of the appraisal materials (which Kondash was also not authorized to do). Rowland did not accept the offer on this date pursuant to the April 17 letter by Cella. Accordingly, the complaint in condemnation was filed. This filing initiated the procedures found in the Eminent Domain Act which ultimately resulted in the vesting of the title to the property in NJDOT pursuant to N.J.S.A. 20:3-21.
On May 14, 1979 Kondash received O'Connor's letter of representation and forwarded the letter to his superiors. Kondash did not seek a stay of the 14-day period because he had no power to do it and there was no procedure for the requested stay. Through a series of contacts from May 17, 1979 to June 12, 1979 *564 a meeting was finally held on June 22, 1979 with NJDOT officials, Rowland, O'Connor and Rowland's own appraiser in attendance. O'Connor suggested that the NJDOT appraisal may have had nine points of error. Kondash gained the impression that although $600,000 was not demanded, the $420,000 figure was definitely rejected. On or about August 7, 1979 the nine points of error submitted by O'Connor were forwarded back to the appraisers of the $420,000 offer. On October 16, 1979 the appraisers reported that the nine items suggested by O'Connor had in fact been considered in the appraisals. Finally, on October 24, 1979 a meeting between O'Connor, Rowland and George E. Curry, Kondash's superior, transpired. At this meeting Rowland was presented with a new offer by NJDOT of $436,200, for an increase of $16,200 from the original offer. The reason for this increase was due to the increase in construction costs since the submission of the initial offer, and, in terms of negotiation on the points made by Rowland or O'Connor, this increase was not a "drastically new" offer. Curry explained to Rowland and O'Connor the appraisal methods used, components and aspects of value, and only that he could disclose if there was a disparity between appraisal approaches but not the reason for such a disparity. Of note is Curry's indication that NJDOT cannot consider an increased offer unless there is a counteroffer or there is a basis for such an increase. Curry's perception of discussion up to this point was that no cause for increasing the offer had yet been presented by Rowland.
After vacation of a default judgment in this matter and the filing of an answer by defendants, defendant Rowland has made a motion under N.J.S.A. 20:3-11 denying the authority of NJDOT to condemn and seeking dismissal of the complaint in condemnation, on the ground that the aforementioned conduct by NJDOT did not constitute "bona fide negotiations" within the spirit of N.J.S.A. 20:3-6. The affirmance of such motion would result in the revesting of the condemned property back to Rowland, with the State of New Jersey obliged to pay damages to Rowland pursuant to N.J.S.A. 20:3-24. If the motion is *565 denied, the cause shall be submitted to commissioners, unless stipulated by condemnor NJDOT and defendant Rowland that "the action shall proceed to trial before the court." N.J.S.A. 20:3-12(a). For the following reasons it is the opinion of this court that NJDOT had engaged in bona fide negotiations with defendant Rowland.

I
The relevant time period in which the bona fide negotiations issue must be examined demands the court's initial determination. The Eminent Domain Act of 1971 appears to set out two negotiation periods. The first is the pre-complaint filing period. Under N.J.S.A. 20:3-6 bona fide negotiations must have occurred, culminating in either agreement and settlement or in disagreement, which, after 14 days from the mailing of the offer so designated, enables the State to file the condemnation complaint. Jersey City v. Realty Transfer Co., 129 N.J. Super. 570, 574 (App.Div. 1974). In the present case this would translate into the period from March 16, 1979, the date of the first meeting, up to and including May 11, 1979, when there was no reply to the State's offer and thus the complaint was filed.
The second time period for negotiations is that occurring "during the pendency of the action," N.J.S.A. 20:3-14, upon which agreement may be made on any or all items of compensation. Since the action can only be pending after the filing of the complaint, N.J.S.A. 20:3-8, this post-filing period would constitute, in the instant case, those discussions between the parties after May 11, 1979.
Since the pre-filing negotiations are mandatory by inclusion of the term "shall" in the statute, N.J.S.A. 20:3-6,[1] and while the post-filing agreements are permissive in nature, N.J.S.A. *566 20:3-14, the relevant time period from which the issues surrounding bona fide negotiations will be determined is March 16, 1979 to May 11, 1979.

II
"What amounts to good faith and reasonable bargaining depends on the circumstances of the particular case." 29A C.J.S., Eminent Domain, § 224(2) (1965). Defendant Rowland urges this court to establish a standard for "bona fide negotiations" in the abstract and then apply that abstract standard to the facts. This request cannot be complied with. The statute in question states:
Whenever any condemnor shall have determined to acquire property pursuant to law, including public property already devoted to public purpose, but cannot acquire title thereto or possession thereof by agreement with a prospective condemnee, whether by reason of disagreement concerning the compensation to be paid or for any other cause, the condemnation of such property and the compensation to be paid therefor, and to whom payable, and all matters incidental thereto and arising therefrom shall be governed, ascertained and paid by and in the manner provided by this act; provided, however, that no action to condemn shall be instituted unless the condemnor is unable to acquire such title or possession through bona fide negotiations with the prospective condemnee, which negotiations shall include an offer in writing by the condemnor to the prospective condemnee holding the title of record to the property being condemned, setting forth the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of such offered compensation has been calculated, and such other matters as may be required by the rules. Prior to such offer the taking agency shall appraise said property and the owner shall be given an opportunity to accompany the appraiser during inspection of the property. Such offer shall be served by certified mail. In no event shall such offer be less than the taking agency's approved appraisal of the fair market value of such property. A rejection of said offer or failure to accept the same within the period fixed in written offer, which shall in no case be less than 14 days from the mailing of the offer, shall be conclusive proof of the inability of the condemnor to acquire the property or possession thereof through negotiations. When the holder of the title is unknown, resides out of the State, or for other good cause, the court may dispense with the necessity of such negotiations. Neither the offer nor the refusal thereof shall be evidential in the determination of compensation. [N.J.S.A. 20:3-6; emphasis supplied]
It is an elementary principle of statutory construction that a term or provision is not to be considered in a vacuum. *567 Rather, a "statute is to be construed as a whole with reference to the system of which it is a part." Maritime Petroleum Corp. v. Jersey City, 1 N.J. 287, 298 (1949). "Another principle is that, in seeking to discover the legislative intent, the statute must be read in the light of the old law, the mischief sought to be eliminated and the proposed remedy." Brewer v. Porch, 53 N.J. 167, 174 (1969). Also, statements attached to the bill which was ultimately enacted may be considered. Id. at 174. The Report of Eminent Domain Revision Committee (Report), written in connection with passage of the Eminent Domain Act of 1971, stated in relevant part:
Complaints have been made to the Commission that negotiations for acquisition are frequently conducted in an arbitrary manner. The owner is advised merely of the dollar amount of the offer, but is given no information, even if he requests, as to the manner of ascertaining the amount so offered. It is believed that such treatment of a property owner is improper. The Commission is of the opinion that if fair offers are made based upon appropriate data disclosed to the owner, many acquisitions will be completed amicably, without subjecting the authority and the owner to the expense and delay of litigation. [at 16]
The predecessor statute, N.J.S.A. 20:1-1, repealed by N.J.S.A. 20:3-49, L. 1971, c. 361, § 49, and cases based on this provision mainly relied on the end result  agreement or disagreement between the condemnor and condemnee  in determining whether the complaint in condemnation could be filed with the court. Philadelphia Trust, Safe Deposit & Ins. Co. v. Merchantville, 75 N.J.L. 451 (Sup.Ct. 1907), aff'd 76 N.J.L. 822 (E. & A. 1908); Coles v. Midland Tel. & Tel. Co., 67 N.J.L. 490 (Sup.Ct. 1902), aff'd 68 N.J.L. 413 (E. & A. 1902). Case law did impose a duty on the condemnor to exert a "bona fide reasonable effort to purchase," Jersey City v. Bayonne, 80 N.J.L. 131, 132 (Sup.Ct. 1910), but in spite of this duty the prior practice was simply not conducive to settlement and avoidance of needless delay and litigation.
The remedies to the mischief are evident in the new statute, N.J.S.A. 20:3-6. The fair market value of the property as established by the taking agency's appraisers must be offered at the outset. Id. This is known as the "full one price offer," *568 which obviates the need of the condemnee to have to bargain with the agency in order to obtain a full fair market value of the property. N.J.A.C. 16:5-2.5. These appraisals are made by specialists and reviewed and registered at NJDOT headquarters. Id. at 16:5-2.2. The other remedies, which constitute the basis of the instant suit, stem from the requirement of bona fide negotiations between the agency and the landowner.
There cannot be much dispute about the term "bona fide." This term has consistently been equated with good faith conduct, honesty and fair dealing. Garford Trucking, Inc. v. Hoffman, 114 N.J.L. 522, 530 (Sup.Ct. 1935); Black's Law Dictionary (5 ed. 1979). However, the definition of "negotiations" is not so easily ascertained. The dictionary definition of the term is "[t]he deliberation, discussion, or conference upon the terms of a proposed agreement; the act of settling or arranging the terms and conditions of a bargain, sale, or other business transaction." Black's Law Dictionary (5 ed. 1979). This abstract definition conjures up the idea of a "give and take" discourse between contracting parties where an offer, acceptance or rejection and counteroffer are exchanged. At the end of these discussions the parties have either reached agreement or they walk away with no exchange taking place.
The term "negotiations" within the Eminent Domain Act is distinctly different from the above concept. First of all, an exchange will take place whether there is agreement or not. Secondly, one of the parties, in this case NJDOT, can only make one offer  its best at the outset. Thus, the taking agency cannot bargain its fair market value price. The court in Greensboro-Highpoint Airport Auth. v. Irvin, 36 N.C. App. 662, 245 S.E.2d 390 (App.Ct. 1978), in construing a statute which required the condemnor to "make a bona fide effort to purchase by private negotiation" before filing the condemnation action, held:
We do not interpret the word "negotiations" in the statute to mandate a series of encounters of offers and counteroffers in an attempt to arrive at a price. Where as here, the condemning authority has based its firm offer to purchase on figures presented to it by its appraisers, we hold that such an offer to purchase *569 meets the requirement to negotiate as set out in the statute. [245 S.E.2d at 396, quoting Murray v. City of Richmond, 257 Ind. 548, 276 N.E.2d 519, 522 (Sup.Ct. 1971)]
It appears that N.J.S.A. 20:3-6 is in congruence with this interpretation.
The statute sets out what is to be included in the negotiations, to wit, a written offer detailing the price, the property interests sought and a "reasonable disclosure of the manner in which the amount [of the offer] has been calculated." N.J.S.A. 20:3-6. This term "reasonable disclosure" has been construed in the case of State v. Meisler, 128 N.J. Super. 307 (Law Div. 1974), where the court noted:
... The manner of calculation is a rather vague standard, but should be construed as requiring, at least, a breakdown between land and improvements, if any; any allocation made for damages to the remainder if less than an entire parcel is taken; and a specification of the appraisal method or methods, i.e., comparable sales, reproduction less depreciation, or capitalization of income. [128 N.J. Super. at 311, quoting Rules Governing the Courts of the State of New Jersey (Gann Law Books 1973 ed. at 731)]
See, also, Rules Governing the Courts of the State of New Jersey (Gann Law Books 1982 ed. at 845-846), for the identical proposition. In line with the above statement, the Meisler court held that the offer which only advised the condemnee that the "cost approach" method of calculation, broken down in "$6,200, value of all property in the taken area, and $41,100 in damages to the remaining property outside the taking area," 128 N.J. Super. at 308-309, constituted a sufficient "breakdown and method of calculation used in making the offer." Id. at 311. It can be assumed "that the Legislature is thoroughly conversant with its own legislation and the judicial construction of its statutes." Brewer v. Porch, supra, 53 N.J. at 174. The fact that the statute in the present case has not been amended to contradict the Meisler construction, or overruled, modified or reversed by an appellate court of New Jersey, leads this court to the conclusion that the Meisler construction is an inerrant statement of law on the term "reasonable disclosure."
Concomitant with the condemning agency's duty is the condemnee's opportunity to question the taking. The breakdown of *570 price and specification of appraisal methods would serve no purpose if the condemnee had to accept the figures presented in the offer on blind faith. However, such an opportunity holds the condemnee to the duty to make a responsible objection to the agency's appraised offer. The court in Idaho Power Co. v. Lettunich, 100 Idaho 582, 602 P.2d 540, 541 (Sup.Ct. 1979), found it could not support a condemnee's refusal of the condemning agency's offer when the condemnee never presented an appraisal which would support the refusal. 602 P.2d at 540.
Finally, it is abundantly clear that the condemning agency does not have to wait indefinitely for the condemnee to act upon the offer. The statute provides that the condemnee must accept the offer within 14 days once notice of the running of this time period is mailed by the condemnor. N.J.S.A. 20:3-6. Once this period runs and the condemnee has not accepted the offer, the statute provides this is "conclusive proof of the inability of the condemnor to acquire the property or possession thereof through negotiations." Id. Upon this occurrence, the complaint in condemnation may be filed with the court. Id. at 20:3-8.

III
Application of the guidelines articulated above indicates that NJDOT had complied with the bona fide negotiations requirements of N.J.S.A. 20:3-6.
The offer, being at full-price appraised value, was presented to Rowland. Although Rowland characterized the offer as a "take it or leave it" proposition, this is not supported by the facts. A more accurate summation of the condemnor's actions would be "take it or show us why the figures are wrong." In line with this posture, NJDOT urged Rowland to obtain the services of an attorney and waited for Rowland to accomplish same. In return, NJDOT was presented with a series of delays in what both parties to this suit knew was a tight time schedule. Furthermore, Rowland had ample time to obtain an appraisal of his own. Rowland was notified of the impending taking on *571 September 7, 1978. The advice he had received on waiting to get an appraisal was obviously stale when the NJDOT appraisers inspected his property, which according to the documents presented to this court should have been sometime in late November or early December of 1978. At this point a reasonable person could conclude that the taking was imminent and an appraisal, if Rowland desired one, should have been done at this juncture. It is noteworthy that even in the post-filing period Rowland had still not indicated that he had his property appraised. Finally, the $600,000 figure was, surprisingly, considered by the agency, despite Rowland's not specifying the property upon which his figure was based. In sum, the actions by NJDOT cannot be characterized as anything less than in good faith.
Concerning the negotiations disclosure and specifications required under N.J.S.A. 20:3-6, as interpreted by the Meisler court, NJDOT was in full compliance. The offer was broken down into monetary figures for land and improvements (the building and fence).[2] The three appraisal methodologies were disclosed. This is all that the statute requires under negotiations. Concomitant with these requirements was the duty of the agency to convince Rowland, through discussion and explanation, of the accuracy of the offer. Rowland had the right, which he exercised, to not accept the figures. In the course of these discussions, however, NJDOT's negotiator went into further detail than required by the statute. Thus, an appropriate disclosure of the manner of calculation was made.
Finally, it was contended that Rowland had not refused the offer but simply wanted an opportunity to authenticate those figures himself. Whether Rowland refused or not is inconsequential under the act. All that was required of Rowland, once he was informed of the same, was that he not accept the offer in *572 the 14-day time period. N.J.S.A. 20:3-6. This is what occurred and thus NJDOT met its obligation under the act.
Accordingly, NJDOT did comply with the bona fide negotiations requirements of N.J.S.A. 20:3-6. The statutory conclusive presumption of inability to agree through these negotiations during the pre-filing period was well in congruence with the facts as presented, and thus the complaint in condemnation was properly filed.
Thus, the motion to dismiss the complaint in condemnation is denied.
NOTES
[1] Note that even though this requirement of bona fide negotiations is mandatory, the statute also provides for certain situations, e.g., the holder of title to property is unknown or resides out of State, or for other good cause, where bona fide negotiations need not be held. N.J.S.A. 20:3-6.
[2] The figures supplied in the offer are not evidential for purposes of determination of compensation by the appointed commissioners or the court. N.J.S.A. 20:3-6.