586 A.2d 1342

STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANS-PORTATION, PLAINTIFF–APPELLANT, v. TOWN OF MORRIS-TOWN, IN THE COUNTY OF MORRIS, A MUNICIPAL CORPO-RATION OF NEW JERSEY, DEFENDANT–RESPONDENT, AND D.M. AIRPORT DEVELOPERS, INC., A CORPORATION OF NEW JERSEY; THE LINPRO COMPANY, A CORPORA-TION OF TEXAS; AMERICAN TELEPHONE AND TELEGRAPH COMPANY, A CORPORATION OF NEW YORK; TOWNSHIP OF HANOVER, IN THE COUNTY OF MORRIS, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFEN-DANTS.

Superior Court of New Jersey
Appellate Division

Argued January 29, 1991—Decided February 20, 1991.

Before Judges ANTELL, SCALERA and KEEFE.

*Lorinda Lasus,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General, attorney, *Michael R. Clancy,* Assistant Attorney General, of counsel, *Lorinda Lasus,* on the brief).

*John H. Buonocore, Jr.,* argued the cause for respondent (*McKirdy and Riskin,* attorneys, *Brian M. Hak,* on the brief).

The opinion of the court was delivered by

SCALERA, J.A.D.

The issue on this appeal concerns the extent of discovery available to a condemnee at various stages of an eminent domain proceeding. While we touched upon this issue partially in *State by Com'r of Transp. v. Carroll,* 234 *N.J.Super.* 37, 559 *A.*2d 1381 (App.Div.1989), *certif. granted* 118 *N.J.* 197, 570 *A.*2d 961 (1989), we did not fully resolve it.[1]

---

[1] Note the recent complaints about unpublished decisions in this area in an article entitled, *Taking Issue With Unpublished Takings Law,* Vol. 126, *N.J.L.J.* 1597, December 13, 1990.

The property sought to be condemned amounts to some seven acres which is part of the 613 acre Morristown Airport and is needed to construct an interchange at Columbia Road for the Route 24 Freeway. Sometime in March 1989, the Department of Transportation (DOT) received two reports appraising the value of the property in question. The "Schwartz appraisal" evaluated the seven acres at $1,445,400, and the "Griffin appraisal" stated that the property was worth $1,668,000. Accordingly, on May 12, 1989, DOT offered to purchase the property for $1,455,400. The record does not reflect the status of negotiations between May 1989 and December 1989.

By letter dated December 18, 1989, the town had asked DOT for more information, ostensibly so that it could properly evaluate the offer of $1,455,400 which had been made. Among other things, it requested a copy of the Griffin appraisal and DOT appraisals of neighboring properties in the "same zone." DOT finally gave the town a copy of the Griffin appraisal only, sometime in January 1990. As a result the town questioned the validity of the offer based on the lower Schwartz appraisal. By letter of February 9, 1990, the town repeated its request for the appraisals on the neighboring properties but DOT again refused.

The litigation phase of this dispute commenced on December 14, 1989, when the plaintiff DOT filed a condemnation complaint declaring that it had properly exercised its authority to acquire the property and demanding an order appointing commissioners to fix the compensation to be paid. *R.* 4:73–1. It was represented to us at oral argument that this followed a DOT letter advising the condemnee of its intention to take this step. The complaint alleged, *inter alia,* that DOT had been unable to acquire the premises through bona fide negotiations.

Defendant Town of Morristown (the town) asserts that it was not aware that suit had been commenced and was not served with the complaint and order to show cause until January 11, 1990. *Cf. R.* 4:67–3. It filed an answer around March 5, 1990,

alleging, in part, that DOT had violated the Eminent Domain Act of 1971 (*N.J.S.A.* 20:3-1 *et seq*) (the act) because it had failed to engage in bona fide negotiations prior to the filing of the complaint, citing DOT's refusal of the town's prior request for appraisals on neighboring properties.[2]

On March 23, 1990, the return date of the order to show cause, Morris County Assignment Judge Reginald Stanton also heard oral argument on the town's request for the appraisals on neighboring properties. As a consequence, he entered a judgment on April 9, 1990 appointing the three commissioners as DOT requested and also provided that,

> Plaintiff [DOT] is to provide defendant [the town] with copies of appraisals on properties in the immediate neighborhood of the subject property.

Although the DOT objected, Judge Stanton in granting this relief, openly expressed his feelings that the State is required to deal "fairly" and openly in condemnation matters so that such information could be used

> ∴. for settlement discussion purposes and ... ultimately for a hearing before the Commissioners, and for trial purposes if you get to that.

In support of its subsequent motion for reconsideration, DOT argued that allowing prospective condemnees access to appraisals on neighboring properties would be expensive, administratively cumbersome and would violate the privacy of those neighbors who cooperated with DOT in the appraisal process by supplying personal or confidential information. It also cited excessive photocopying costs, a perceived need to update the appraisals on neighboring properties and concluded by claiming that its administrative burden would "be so costly and complicated that ... DOT may be forced to break large projects into small sections" thereby increasing costs to the public. Judge Stanton found DOT's arguments to be without merit, especially since he had ordered the town to pay for any costs incurred by DOT in complying with his order.

---

[2] The other defendants, consisting principally of tenants that might have an interest, are not involved in this appeal.

On this appeal, DOT first raises the argument that the act, particularly *N.J.S.A.* 20:3–6, does not require a condemnor to make available appraisals of neighboring properties at the negotiation stage, and after the complaint is filed, the condemnee is not entitled to receive such information at all. In other words, once a complaint is filed discovery is further limited by the statute and court rules.

However, here service of the complaint and order to show cause was not effected until about one month after the complaint was filed, (*R.* 4:73–3. *Cf. R.* 4:4–1), during a time when the town reasonably could have thought that negotiations were still in progress. Thus, as far as the town was aware, the condemnation was still in the pre-complaint posture. Further, at the time of negotiations, the town was not yet claiming that the DOT pre-litigation offer was inadequate; it merely wanted additional information to assure itself that its taxpayers were getting reasonable value for the property. Thus, one must question whether a true post-complaint proceeding had been reached.

Notwithstanding that issue, DOT maintains that the act requires disclosure of only that material which it, as the condemnor, actually utilized in calculating its offer. Because each property is unique, it argues that another property's value is not helpful in determining the value of an adjacent property. Since it did not utilize any appraisals of neighboring properties in this case, it argues, such is not discoverable. Finally, DOT continues to insist that allowance of such discovery would have widespread negative consequences, ranging from requiring increased copying costs to making it more difficult to get appraisals because property owners would be less willing to cooperate, knowing that those appraisals might be disclosed to their neighbors.

Condemnation, in such cases, is governed by the act which provides specifically that,

> ... no action to condemn shall be instituted unless the condemnor is unable to acquire such title or possession through bona fide negotiations with the prospective condemnee, *which negotiations shall include* an offer in writing by the condemnor to the prospective condemnee holding the title of record to the property being condemned, setting forth the property and interest therein to be acquired, the compensation offered to be paid and *a reasonable disclosure of the manner in which the amount of such offered compensation has been calculated,* and such other matters as may be required by the rules.... In no event shall such offer be less than the taking agency's approved appraisal of the fair market value of such property. A rejection of said offer or failure to accept the same within the period fixed in written offer, which shall in no case be less than 14 days from the mailing of the offer, shall be conclusive proof of the inability of the condemnor to acquire the property or possession thereof through negotiations. [*N.J.S.A.* 20:3–6; emphasis supplied].

The obvious purpose of this requirement is to encourage public entities to acquire property without litigation, thereby saving both the entity and the condemnee the expense and delay of a trial, and permitting the landowner to receive just compensation. *Rockaway v. Donofrio,* 186 *N.J.Super.* 344, 353–354, 452 *A.*2d 694 (App.Div.1982). As noted by the Eminent Domain Revision Commission, which was charged with proposing the 1971 revision:

> Complaints have been made to the Commission that negotiations for acquisition are frequently conducted in an arbitrary manner. The owner is advised merely of the dollar amount of the offer, but is given no information, even if he requests, as to the manner of ascertaining the amount so offered. It is believed that such treatment of a property owner is improper. The Commission is of the opinion that if fair offers are made based upon appropriate data disclosed to the owner, many acquisitions will be completed amicably, without subjecting the authority and the owner to the expense and delay of litigation. [*Cited at* 186 *N.J.Super.* at 350, 452 *A.*2d 694].

At first our trial courts had construed *N.J.S.A.* 20:3–6 narrowly and held that it did not require prelitigation disclosure of the written appraisal upon which the condemning entity relied in making its offer of compensation as long as it had disclosed the basis for its offer. *State v. Rowland,* 183 *N.J.Super.* 558, 569, 444 *A.*2d 1123 (Law Div.1982); *State v. Meisler,* 128 *N.J.Super.* 307, 310–311, 319 *A.*2d 790 (Law Div.1974).

However, in *State v. Siris,* 191 *N.J.Super.* 261, 466 *A.*2d 96 (Law Div.1983) Judge Martin Haines recognized that a change in the policy had been wrought by the newly enacted act which

compelled the government to be forthright in condemnation cases. Although he was concerned therein with post-litigation disclosure, he correctly observed that a government's obligation under the State constitution is to be open in its dealings when acquiring property by just compensation and no sound reason exists to shroud the government's evaluation in secrecy. *Id.* at 266, 466 *A.*2d 96.

Two years later in *State v. Hancock*, 208 *N.J.Super.* 737, 506 *A.*2d 855 (Law Div.1985), *aff'd o.b.* 210 *N.J.Super.* 568, 510 *A.*2d 278 (App.Div.1985), he held that in an offer based upon the comparable sales method, the government must disclose the adjustments made by the appraiser to the comparable sales data because a landowner cannot meaningfully check the validity of the figure offered without such information. *Id.* 208 *N.J.Super.* at 740–741, 506 *A.*2d 855.

Judge Michael Patrick King, writing for this court, in affirming that decision, adopted the opinion of Judge Haines in *Hancock* and expressly disapproved of the more restrictive approaches set forth in *State v. Rowland, supra,* 183 *N.J.Super.* at 569, 444 *A.*2d 1123 and *State v. Meisler, supra,* 128 *N.J.Super.* at 310, 319 *A.*2d 790. He also noted that while *R.* 4:73–1 applied only to post-litigation disclosure, nevertheless, the government still had the overriding obligation in condemnation proceedings to deal "forthrightly and fairly with property owners." *State v. Hancock, supra,* 210 *N.J.Super.* at 570, 510 *A.*2d 278. This court's opinion in *Hancock* also was cited with approval by another panel of this court in *New Jersey Housing and Mortgage Finance Agency v. Moses,* 215 *N.J.Super.* 318, 329, 521 *A.*2d 1307 (App.Div.1987), *certif. denied* 107 *N.J.* 638, 527 *A.*2d 460 (1987).

This trend toward requiring fuller disclosure by the government in condemnation cases has continued unabated. For example, we have held that supplying "a copy of the appraisal is merely the minimum threshold to good faith negotiations" and in many cases something more may be required. *Morris*

*County v. Weiner,* 222 *N.J.Super.* 560, 564–565, 537 *A.*2d 752 (App.Div.1988), *certif. denied* 111 *N.J.* 573, 546 *A.*2d 501 (1988). It thus becomes evident that the act must be read to mean that, at any stage, condemnees are entitled to receive enough information to the end that they may "be assured that the government is treating them with absolute candor and fairness and that such an assurance can only be given where there is full disclosure during negotiations of all the information upon which the government relies in making its offer." *Morris County v. 8 Court Street Ltd.,* 223 *N.J.Super.* 35, 39, 537 *A.*2d 1325 (App.Div.1988), *certif. denied* 111 *N.J.* 572, 546 *A.*2d 500 (1988). We have even suggested that a condemnation complaint should be dismissed where the condemnor fails to supply the appraisal and other information showing the manner in which the amount being offered was calculated. *Monmouth County v. Whispering Woods,* 222 *N.J.Super.* 1, 9, 535 *A.*2d 968 (App.Div.1987), *certif. denied* 110 *N.J.* 175, 540 *A.*2d 173 (1988).

Citing this dramatically expanded disclosure requirement by the condemning authority in condemnation cases, the Law Division held recently that the condemnor must disclose all of the appraisals of the property in its possession, not just the one it relied upon in making the offer. *State v. D'Onofrio,* 235 *N.J.Super.* 348, 562 *A.*2d 267 (Law Div.1989). In addition, we have held that the condemnor must disclose any studies it performed concerning collateral considerations on the value of that part of a property not taken and a description of the appraisal method utilized by the condemnor. *State v. Carroll, supra,* 234 *N.J.Super.* at 49, 56, 559 *A.*2d 1381.[3] As indicated above, the condemnee's right to examine appraisals of neighboring properties was raised but not resolved therein. *Id.* at 50, 559 *A.*2d 1381.

---

[3]We understand that *Carroll* was argued before the Supreme Court on September 24, 1990. However, it appears the central issue in that case may be the impact of noise on that part of the property not taken, resulting from the State's use of the condemned property.

■ We feel strongly that, as was pointed out in *State v. Riley*, 242 *N.J.Super.* 113, 120, 576 *A.*2d 39 (App.Div.1990), quoting Mr. Justice Holmes in *Rock Island, A & L.R.R. v. United States*, 254 *U.S.* 141, 143, 41 *S.Ct.* 55, 56, 65 *L.Ed.* 188, 189 (1920), the government should be required to "turn square corners" in dealing with its citizens. The bottom line is that we disagree with DOT that any provision of the act or the rules set forth in *R.* 4:73 *et seq.* limits the required disclosure to the manner in which the condemnor calculated the amount it would offer. In our judgment, the correct approach is set forth in the more recent cases requiring disclosure of any material that one reasonably can show to be relevant in calculating the offer, *i.e.*, the approved appraisal, a second appraisal on the property, or a response to obvious deficiencies in the appraisal, depending on the circumstances of each case.

■ Moreover, we see no reason to define these discovery rights, depending on whether a case is in the pre-litigation and post-litigation stage. If a condemnee is entitled to appraisals of neighboring properties before litigation begins, we see no reason not to afford him that information thereafter.

*R.* 4:73–11, governing the litigation stage, was approved to govern the extent of discovery allowable to conform with the act. (*Cf. R.* 4:73–1). It provides in paragraph (a) that the usual discovery rules available generally in civil cases shall not be applicable "except by leave of court." In paragraph (b) it sets forth only the minimum requirements of discovery without any court order, during the commissioner's hearings and at a trial. Thus, while it purports to set forth minimum discovery, there is no absolute restriction concerning what discovery is available if the court's involvement is sought. We conclude that the circumstances which may arise mandate that an *ad hoc* approach be taken. In other words, if the condemnee can demonstrate that it reasonably needs such information in order to achieve a fair and just compensation for the taking, at whatever stage,

166

then it is entitled to the information which the condemnor possesses. *N.J. Const. of 1947* art. I, para. 20.

Thus, we hold that when requested, such information can be ordered by the court whenever it is persuaded by the condemnee that the information is relevant, whether the request be made at the pre-litigation offer stage (*N.J.S.A.* 20:3–6), the commissioner's hearing phase (*N.J.S.A.* 20:3–12), or the trial phase (*N.J.S.A.* 20:3–13). *R.* 4:10–1 *et seq.*

A close reading of the act, as well as the rules promulgated pursuant thereto, reveals that there really are no limitations proscribing the release of such information, where to do so would result in an unjust compensation and disclosure of such information would further the goal of achieving "just compensation." For example, the mere fact that appraisals of neighboring properties have played no role in DOT's calculation of the fair market value of the property in question may not be a sufficient basis for refusal to disclose such, if the condemnee is able to show that such information properly should have played a role in the evaluation process.

However, we caution that such requests should not be granted routinely and that the burden rests with the party seeking such information to show that the requested discovery is relevant in arriving at a determination of fair market value or just compensation. The condemning authority should not be forced to disclose it without such a showing. The court's order, in that regard, accordingly should be very specific.

Finally, suffice it to say that we are not persuaded by DOT's argument concerning the administrative difficulties it perceives resulting from compliance with such disclosure. Obviously, DOT must only provide those appraisals which already are in its possession. Moreover, the problem of consequential costs can be resolved practically by the trial court, using its discretion, on a case by case basis. Further, there appears to be no real basis for DOT's fear that neighboring owners may decline to share what they view as confidential information with DOT's

appraisers. If they were to prove this to be so in a particular case, a court may enter an appropriate protective order. *R.* 4:10–3.

Thus, while we affirm in part as to Judge Stanton's general approach, we remand the matter to resolve the issues of relevance and discoverability as well as the entry of a more specific order, depending on how those matters are resolved. We do not retain jurisdiction.