609 A.2d 409

STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANS-PORTATION, PLAINTIFF–APPELLANT, v. TOWN OF MORRIS-TOWN, IN THE COUNTY OF MORRIS, A MUNICIPAL CORPO-RATION OF NEW JERSEY, DEFENDANT–RESPONDENT, AND D.M. AIRPORT DEVELOPERS, INC., A CORPORATION OF NEW JERSEY; THE LINPRO COMPANY, A CORPORA-TION OF TEXAS; AMERICAN TELEPHONE AND TELEGRAPH COMPANY, A CORPORATION OF NEW YORK; TOWNSHIP OF HANOVER, IN THE COUNTY OF MORRIS, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFEN-DANTS.

Argued February 3, 1992—Decided July 27, 1992.

*Lorinda Lasus,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Michael R. Clancy,* Assistant Attorney General, of counsel).

*John H. Buonocore, Jr.,* argued the cause for respondent (*McKirdy* and *Riskin,* attorneys; *Brian M. Hak,* on the brief).

The opinion of the Court was delivered by

CLIFFORD, J.

In this eminent-domain proceeding arising out of the Department of Transportation's construction of a State highway, the condemnee requested, before a condemnation complaint had been filed, that the condemnor provide copies of its appraisal reports on neighboring properties. In modifying the Law Division's judgment granting the requested relief, the Appellate Division held that a court can order the production of such information, if relevant, at either the pre-litigation phase, the Commissioner of Transportation's hearing phase, or the trial phase of the proceedings. *State, Comm'r of Transp. v. Morristown*, 246 *N.J.Super.* 156, 166, 586 *A.*2d 1342 (1991). We granted certification, 126 *N.J.* 389, 599 *A.*2d 165 (1991), to review that determination only as it relates to pre-litigation disclosure, and now reverse.

To construct an interchange on State Highway 24, DOT decided to condemn about seven acres of the Morristown Airport, owned by the Town of Morristown. In March 1989, DOT received two reports appraising the value of that property: one, the so-called Schwartz appraisal, valued the property at $1,445,400; the other, the Griffin appraisal, valued the property at $1,668,000. On May 12, 1989, DOT, relying on the Schwartz appraisal, offered to purchase the property from the Town for $1,445,400, attaching to its written offer a copy of that appraisal. The record discloses little about subsequent negotiations, but on December 14, 1989, the State, by the Commissioner of Transportation, filed a condemnation complaint alleging that DOT had been unable to acquire the property through *bona fide* negotiations with Morristown. However, DOT did not serve the Town with a copy of the condemnation complaint and order to show cause until January 11, 1990.

Apparently unaware that DOT had filed its complaint, Morristown requested more information from DOT in a letter dated December 18, 1989. Morristown asked DOT for a copy of all other appraisal reports concerning the property, and "copies of

any and all appraisals prepared or commissioned with respect to neighboring properties, whether contiguous to the subject property or not, and located in the same zone as the subject property." That DOT possessed appraisals of neighboring properties is undisputed, but the record is silent concerning the circumstances under which and the purposes for which DOT acquired those appraisals.

On January 18, 1990, Morristown received a copy of the Griffin appraisal, but DOT refused to provide the appraisals of neighboring properties. On March 7, 1990, the Town filed an answer to the State's complaint and order to show cause, alleging, in part, that DOT had violated the Eminent Domain Act of 1971 (Act), *N.J.S.A.* 20:3-1 to -50. Morristown argued that by failing to provide appraisals of neighboring property, DOT had failed to engage in *bona fide* negotiations as required by the Act.

On April 8, 1990, the trial court ruled in favor of the State, and appointed three commissioners to determine the amount of compensation. However, paragraph eight of the order required DOT to provide "copies of appraisals on properties in the immediate neighborhood of the subject property."

After the court denied DOT's motion for reconsideration of paragraph eight, DOT appealed, arguing that the Act does not require a condemnor to make available to a condemnee any appraisals of neighboring properties during any phase of condemnation proceedings. As indicated, the Appellate Division held that neighboring appraisals "can be ordered by the court whenever it is persuaded by the condemnee that the information is relevant, whether the request be made at the pre-litigation offer stage (*N.J.S.A.* 20:3-6), the commissioner's hearing phase (*N.J.S.A.* 20:3-12), or the trial phase (*N.J.S.A.* 20:3-13)." 246 *N.J.Super.* at 166, 586 *A.*2d 1342. However, the Appellate Division cautioned, "The burden rests on the party seeking such information to show that the requested discovery is relevant in arriving at a determination of fair market value.

\* \* \* The court's order, in that regard, accordingly should be very specific." *Ibid.*

On the question of who should pay for producing copies of appraisal reports, the Appellate Division declared that the trial court can, in its discretion, impose those costs on the condemnee. *Ibid.* And finally, to guard against disclosure of confidential information the Appellate Division noted that "in a particular case, a court may enter an appropriate protective order." *Id.* at 167, 586 *A.*2d 1342. Accordingly, the Appellate Division affirmed in part the trial court's "general approach," but remanded for entry of a more specific order. *Ibid.*

On remand, the trial court again ordered DOT to produce the appraisals of neighboring properties. Although DOT has since complied with that order and although it agrees with the Appellate Division's decision to the extent that it allows the discovery of neighboring appraisals *after* the condemnor has filed a complaint, DOT petitioned this Court for certification to challenge so much of the decision as establishes the condemnee's right to neighboring appraisals *before* a complaint has been filed. DOT argues that the inevitable result will be increased costs and delays in the construction of public projects.

Because the appeal presents a question of general public importance, we address the issue even though this case is moot. *See Transamerica Ins. Co. v. National Roofing, Inc.,* 108 *N.J.* 59, 64, 527 *A.*2d 864 (1987) ("Even if a matter is technically moot, our courts may retain jurisdiction if to do so is in the public interest \* \* \*.").

## II

We reverse the judgment of the court below for two reasons: first, because it improperly involves the judiciary in the *bona fide* negotiation stage of the condemnation process; and second, because it interprets the condemnor's disclosure obligation too broadly, beyond the plain language of *N.J.S.A.* 20:3–6 (section six).

—A—

■ Section six, which sets forth the condemnor's pre-complaint obligations, provides that before filing a complaint the condemnor must engage in *bona fide* negotiations,

> which negotiations shall include an offer in writing * * * setting forth the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of such offered compensation has been calculated, and such other matters as may be required by the rules.

One of the primary purposes of section six is to encourage acquisition without judicial involvement. In the words of the Appellate Division, "The obvious purpose of [section six] is to encourage public entities to acquire property without litigation, thereby saving both the entity and the condemnee the expense and delay of a trial." 246 *N.J.Super.* at 162, 586 *A.*2d 1342. The Eminent Domain Revision Commission describes the purposes of the Act as follows:

> To foster amicable adjustments and *thereby reduce litigation,* the statute shall require that before proceedings are instituted, the condemning body shall conduct bona fide negotiations with the owners, through fair offers of compensation, including a reasonable disclosure of the manner of arriving at the offer.
>
> \*      \*      \*      \*      \*      \*      \*      \*
>
> The commission is of the opinion that if fair offers are made based upon appropriate data disclosed to the owner, *many acquisitions will be completed amicably, without subjecting the authority and the owner to the expense and delay of litigation.*
>
> [*Report of the Eminent Domain Revision Commission,* 7, 16 (1965) (emphasis added).]

By requiring the condemnor to provide neighboring appraisals during the *bona fide* negotiations stage whenever a *court* determines that such information is "relevant," the Appellate Division has frustrated that purpose. The *bona fide* negotiation stage was created to precede judicial involvement in the hope of avoiding it entirely. The Appellate Division's holding accelerates and practically ensures judicial involvement in all phases of the condemnation process, precisely the opposite of what the Legislature sought to achieve. As applied to relatively large-scale projects, like the construction of State Highway

24 in this case, the Appellate Division's decision could create substantial litigation, resulting in delay and increased expenses for all parties.

—B—

Moreover, the Appellate Division has improperly expanded the condemnor's pre-complaint disclosure obligation. The Appellate Division found that no "provision of the act or the [Court R]ules limits the required disclosure to the manner in which the condemnor calculated the amount it would offer." We disagree. Section six contains precisely that limitation. Although we recognize that "government has an overriding obligation to deal forthrightly and fairly with property owners," *F.M.C. Stores Co. v. Borough of Morris Plains*, 100 *N.J.* 418, 426, 495 *A.*2d 1313 (1985), section six should not be construed to require either complete disclosure or the disclosure of neighboring appraisals.

Section six provides a clear description of the condemnor's disclosure obligation: in addition to the terms of the offer, the condemnor must provide "a reasonable disclosure of the manner in which [the offer] has been calculated." Because the purpose of that disclosure requirement is to protect property owners, "reasonable disclosure" has been—and should be—construed liberally in favor of broad disclosure to property owners. *State, Comm'r of Transp. v. Carroll*, 123 *N.J.* 308, 316–17, 587 *A.*2d 260 (1991). For example, in *County of Monmouth v. Whispering Woods*, 222 *N.J.Super.* 1, 535 *A.*2d 968 (App.Div.1987), *certif. denied*, 110 *N.J.* 175, 540 *A.*2d 173 (1988), the condemnor failed to disclose the appraisal that had formed the basis for the offer. Although section six does not expressly require the condemnor to disclose an appraisal of the property to be condemned, the Appellate Division construed "reasonable disclosure" to require that such information be provided to the property owner. *Accord, e.g., County of Morris v. 8 Court Street Ltd.*, 223 *N.J.Super.* 35, 537 *A.*2d 1325

(App.Div.), *certif. denied,* 111 *N.J.* 572, 546 *A.*2d 500 (1988) (holding that failure to provide copy of either of two appraisal reports used to calculate offer during negotiations constitutes failure of *bona fide* negotiations).

■ In *State, Commissioner of Transportation v. Testa,* 247 *N.J.Super.* 335, 589 *A.*2d 190 (1991), the Appellate Division further expanded the "reasonable disclosure" requirement by requiring DOT to provide condemnees with copies of *all* appraisals of the subject property, not just the one relied on by the condemnor as the basis for the offer. The court held that reasonable disclosure

> logically includes turnover of all appraisals as we are unable to perceive how the State's calculation of the compensation to be offered would not of necessity include consideration of all appraisals [that] it had obtained in an effort to arrive at its good faith determination of full fair market value. [*Id.* at 338, 589 *A.*2d 190.]

*See State, Comm'r of Transp. v. D'Onofrio,* 235 *N.J.Super.* 348, 355, 562 *A.*2d 267 (Law Div.1989) (requiring disclosure of all appraisals of subject property as part of pre-litigation *bona fide* negotiations). Thus, a condemnor's disclosure obligation is broad: as long as the information has been considered by the condemnor when calculating the offer, "reasonable disclosure" requires the condemnor to provide such information to the property owner.

However, as Justice Handler pointed out in *Carroll, supra,* 123 *N.J.* at 320, 587 *A.*2d 260, rather than requiring complete disclosure, the Legislature placed a limit on the condemnor's obligation to disclose. Section six requires a reasonable disclosure only of information that relates to the manner in which the offer was calculated. *N.J.S.A.* 20:3-6. Despite dictum to the contrary, see *State, Commissioner of Transportation v. Siris,* 191 *N.J.Super.* 261, 268, 466 *A.*2d 96 (Law Div.1983) (noting that State must disclose *"complete* appraisal information during pre-litigation negotiations"); and *State, Commissioner of Transportation v. Hancock,* 208 *N.J.Super.* 737, 506 *A.*2d 855

(Law Div.1985) (same), no reported decision has held that disclosure of information unrelated to that calculation is required.

Our interpretation of section six finds support in the legislative history. Rather than stating that the Act should be construed to require disclosure of all relevant information, the *Report of the Eminent Domain Revision Commission* carefully links the disclosure obligation with the manner of calculating the offer. It provides:

> Complaints have been made to the Commission that negotiations for acquisition are frequently conducted in an arbitrary manner. The owner is advised merely of the dollar amount of the offer, but is given no information, even if he requests, *as to the manner of ascertaining the amount so offered.* It is believed that such treatment of a property owner is improper. * * * The Commission, therefore, recommends that no proceedings for the taking of property shall be instituted until *bona fide* negotiations (*including a reasonable disclosure of the basis of the offer*) have failed. (Emphasis supplied).

■■ Even the Court Rules, which apply to the litigation stages of the condemnation process, do not provide for unlimited disclosure. *Rule* 4:73–1 details the requirements for a condemnation complaint. Like section six, it requires a "reasonable disclosure of the manner in which the amount has been calculated." Unless a court "for good cause orders otherwise," reasonable disclosure includes a description of the property and a statement of its full fair-market value,

> including a description of the appraisal valuation method or methods relied upon * * *; and data concerning comparable sales or leases relied upon * * *; and any unusual factors known to the condemnor which may affect value.

Thus, absent a court order a condemnor need not disclose information unrelated to the manner of calculating the offer even in the condemnation complaint. And the condemnor's pre-complaint disclosure obligation can be no broader than its obligation during litigation. *Carroll, supra,* 123 *N.J.* at 320, 587 *A.*2d 260.

■ Having staked out the limits of the required disclosure, we now consider whether section six requires the disclosure of appraisals of neighboring properties. We have recently touched on that very question. In *Carroll, supra,* 123 *N.J.* at 321, 587 *A.*2d 260, we held that DOT need *not* provide apprais-

als of neighboring properties—at least when "the relevance of such information [is] not a subject of discussion." We noted the limits of DOT's pre-complaint disclosure obligation: the obligation was not one of full disclosure and "ordinarily would not be as extensive as discovery during litigation." *Id.* at 320, 587 *A.*2d 260. Although we recognized that appraisals of neighboring property might be discoverable during the post-complaint phase, we found that the State need not furnish neighboring appraisals during the pre-litigation phase. *Id.* at 321, 587 *A.*2d 260.

We adhere to and extend our holding in *Carroll.* Even when the condemnee requests neighboring appraisals, DOT need not produce such information during the *bona fide* negotiation stage of the condemnation process unless DOT used or considered those appraisals in calculating the amount it would offer the condemnee. Ordinarily, DOT makes offers based on appraisals of the subject property. Those appraisals include, among other things, a description of the property, a description of relevant valuation methods, and a description of comparable sales. See *N.J.C.A.* 16:5–2.2(a). According to DOT, appraisals of property to be condemned rarely, if ever, rely on or consider appraisals of neighboring property. Although uninformed by this record, our assumption is that DOT's use of appraisals of neighboring properties had absolutely no connection with the acquisition of the parcel here in question. Thus, excepting the rare case in which an appraisal of the subject property relies on an appraisal of neighboring property, DOT need not disclose neighboring appraisals during the pre-complaint phase of the condemnation process.

### III

In summary, we are concerned, as was the Appellate Division, that a contrary rule, one requiring disclosure of neighboring appraisals whenever requested by a condemnee, would be ill-advised. To disclose neighboring appraisals whenever re-

quested would needlessly risk intrusion on the privacy interests of the condemnee's neighbors. Unlike the Appellate Division, however, we believe that judicial oversight to weed out sensitive information and to ensure relevancy would frustrate the purpose of section six. Had the Legislature intended to burden the condemnor with a duty of complete disclosure, or a duty to disclose everything "relevant," it easily could have so provided. Without further direction from the Legislature, we reiterate the conclusion reached in *Carroll, supra* : "While [appraisals of neighboring properties] could become germane and discoverable in later condemnation proceedings, the State need not furnish [them] with the pre-negotiation appraisal." 123 *N.J.* at 321, 587 *A.*2d 260.

## IV

Judgment reversed.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN.

*Opposed*—None.