191 N.J. Super. 261 (1983)
466 A.2d 96
STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF,
v.
FRED SIRIS; WOODROW WINDSOR, T/A WINDSOR MOTORS; TOWNSHIP OF DELRAN, IN THE COUNTY OF BURLINGTON, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
May 24, 1983.
*263 John J. Reilly for plaintiff (Irwin I. Kimmelman, Attorney General of New Jersey).
*264 S. David Brandt for defendants (Brandt, Haughey, Penberthy, Lewis & Hyland, attorneys).

OPINION
HAINES, A.J.S.C.
The State of New Jersey acquired part of the defendant Siris' property by condemnation. Since the parties were not able to agree upon the amount of compensation to be paid by the State commissioners were appointed for that purpose. Their hearing, interrupted by a dispute concerning evidence, has never been completed. This opinion resolves that dispute.
The parties exchanged appraisal reports, as required by N.J.S.A. 20:3-12(d), prior to the hearing. The State's report identified the comparable property sales upon which it relied and provided an analysis of the adjustments used to translate that sales information into market value for the condemned property. Defendant, a broker and a dealer in real estate for 60 years, provided his own opinion of value. He did not rely on comparable sales information, contending that none was available.
At the commissioners' hearing, the State presented its engineer who described the property and outlined the State's construction plans. He was cross-examined by defense counsel and questioned by the commissioners. Defendant was present with a stenographer and Harrison L. Todd, an appraiser who was consulted by defense counsel during the hearing. Todd had not provided any appraisal of the property and was not to be a witness. Counsel for the State, after the engineering evidence had been presented, advised the commissioners that he would not call the State's appraiser, Calvin M. Schwartz. He said:
Mr. Commissioners, I'm a little disturbed about what I've been observing here this morning. Prior to the hearing I had forwarded to Mr. Brandt the appraisal report of the State's expert, Mr. Schwartz, who is here today, and I received from Mr. Brandt a one-and-a-half page statement by Mr. Siris, who is a realtor, which apparently constitutes his appraisal report. Contains no comparable sales, strictly unfounded opinion by a property owner. I also notice in the courtroom here today, Mr. Harrison Todd, who is a well known real estate appraiser in the *265 area, who, through the course of the testimony so far, has been conferring with Mr. Brandt. The purpose of the hearing before Commissioners is to present a case in adversary posture hoping that through a  through an adversarial process at the Commission Hearing level, many of the cases can be disposed of. I think what can happen here today is an abuse of that process to occur.
I submit that if I present Mr. Schwartz to testify, Mr. Brandt will have a full opportunity to cross-examine him as to his opinion. Mr. Todd is here, observing, taking notes, the owner will then be in an opportunity to file an appeal from the award of Commissioners, knowing full well the State's case, having had an opportunity to fully explore the bases, the strengths and weaknesses, and to structure a reactive appraisal report, and in the process, have the State up against the wall, having given its full position at the Commission Hearing and having gotten nothing in return. And not only that, but I think it makes a mockery of the Commission Hearing process. This is not a discovery tool, it's an adversarial proceeding.
The State then offered to submit the Schwartz written appraisal to the commissioners without testimony. Defense counsel objected. The chairman of the commission ruled that the written appraisal could not be admitted without the support of the appraiser's testimony. As an alternative, the State presented William DeJoy, a case coordinator, to present the State's opinion as to value, merely a dollar figure. It was admitted the DeJoy was not an expert. The defense then stipulated the figure, objected to the procedure and announced that it would seek instructions from the court.
The dispute centers upon N.J.S.A. 20:3-12(e) which provides:
At the hearing, the condemnor shall proceed first to offer proof of the nature and extent of the taking, and its opinion of compensation payable by reason thereof.
How is this language to be interpreted? It is the State's position that it met the statutory requirement when it presented the State's dollar opinion of value through its case coordinator. Defendant reads the statute more broadly. He would require the State's expert to present his appraisal and be subject to full cross-examination. My interpretation of the statute agrees with defendant's.
In Rockaway v. Donofrio, 186 N.J. Super. 344, 352 (App.Div. 1982), the court required the State's strict compliance with the provisions of N.J.S.A. 20:3-6, which requires its initiation of *266 settlement negotiations when property is condemned. The court noted that
... a condemnation case raises special considerations. A condemnee ordinarily does not request that his property be condemned. Certainly, defendants here did not. A condemnee has a constitutional right to just compensation. [at 352]
It noted that a property owner would not receive full compensation, if obliged to employ an attorney to defend the litigation, since attorney's fees would reduce the amount of the award. Such fees normally are not recoverable in a condemnation proceeding. Consequently, the State must undertake adequate pre-litigation settlement negotiations in order to provide a property owner with a genuine opportunity to obtain full compensation for the condemnation.
This solicitude for one who suffers the involuntary loss of property at the hands of the State is entirely appropriate. Our Constitution, N.J. Const. (1947), Art. I, par. 20, requires payment of just compensation for property taken in condemnation. The State is bound to observe this constitutional mandate. Our Eminent Domain Act, N.J.S.A. 20, was adopted to insure such observance. The State must undertake all of the actions required by that Act in a way fairly calculated to produce "just compensation." Its obligation to its citizens, which it represents, is to be open in all of its dealings. Nothing less will produce a fair result, understood and accepted as such by all involved. No sound reason supports the right of the State to shroud its valuation approaches in secrecy when condemning property. Secrecy is as contrary to the interests of the citizens who pay the cost of condemnation as it is to those whose property is condemned. Full disclosure by the State, the taker, is the intention of the Legislature. The thread of that philosophy runs through the history, the language and the logic of our condemnation statutes.
Our Eminent Domain Act, N.J.S.A. 20:1-1 et seq., was adopted in 1971. It was based upon the recommendations contained in a 1965 report of the Eminent Domain Revision Commission. *267 That report insists upon the State's fair approach to value. For example:
Article I, par. 2:
To foster amicable adjustments and thereby reduce its litigation, the statute shall require that before proceedings are instituted, the condemning body shall conduct bona fide negotiations with the owners, through fair offers of compensation, including a reasonable disclosure of the manner of arriving at the offer. (Emphasis supplied)
Article II:
Complaints have been made to the Commission that negotiations for acquisition are frequently conducted in an arbitrary manner. The owner is advised merely of the dollar amount of the offer, but is given no information, even if he requests, as to the manner of ascertaining the amount so offered. It is believed that such treatment of a property owner is improper. The Commission is of the opinion that if fair offers are made based upon appropriate data disclosed to the owner, many acquisitions will be completed amicably, without subjecting the authority and the owner to the expense and delay of litigation.
The Commission, therefore, recommends that no proceedings for the taking of property shall be instituted until bona fide negotiations (including a reasonable disclosure of the basis of the offer) have failed. (Emphasis supplied)
These recommendations are reflected in N.J.S.A. 20:3-6, which provides in part that
... No action to condemn shall be instituted unless the condemnor is unable to acquire such title or possession through bona fide negotiations with the prospective condemnee which negotiations shall include an offer in writing by the condemnor to the respective condemnee holding the title of record to the property being condemned, setting forth the property and interest therein to be acquired, the compensation offered to be paid, and a reasonable disclosure of the manner in which the amount of such offer of compensation has been calculated, and such other matters as may be required by the rules. Prior to such offer, the taking agency shall appraise said property and the owner shall be given an opportunity to accompany the appraiser during inspection of the property. Such offer shall be served by certified mail. In no event shall such offer be less than the taking agency's approved appraisal of the fair market value of the property. (Emphasis supplied)
It is thus apparent that both the history and the content of our Eminent Domain Act require the State to act fairly and openly. The Eminent Domain Revision Commission recommended that "the condemning body shall conduct bona fide negotiations with the owners", make "fair offers of compensation", and "reasonable disclosure of the manner of arriving at the offer." It deplored past practices involving no more than a *268 dollar disclosure expressing "the opinion that ... fair offers... based upon appropriate data disclosed to the owner" should be made. It recommended "reasonable disclosure of the basis of the offer" in connection with "bona fide negotiations" prior to the taking of the property. The Legislature, in N.J.S.A. 20:3-6, required "a reasonable disclosure of the manner in which the amount of ... offered compensation has been calculated...." These repeated insistencies upon "bona fide negotiations", "fair offers" and "reasonable disclosure" relate to negotiations prior to the commencement of litigation. The State here contends for a much less demanding rule after litigation has commenced, where the need for complete information, as well as fair tactics, has become even more pressing. My reading of the statute requires the State to disclose its complete appraisal information during pre-litigation negotiations. How can a property owner be assured that the State's offer is fair and bona fide without that information? Refusal by the State to disclose its appraisal information in full clearly invites suspicion. Furthermore, the statute requires the State's offer to be no less than its "approved appraisal". How can the condemnee be assured that the offer meets that condition if the appraisal report is hidden? Since this is the pre-litigation requirement, it makes no sense to interpret the Act as requiring less after litigation has commenced.
The aim of the required bona fide negotiations before the commencement of litigation is to encourage settlements which avoid the expense of litigation. Rockaway v. Donofrio, supra. After litigation has commenced, the interest in effecting settlement is at least as keen. If the conflicting claims of the parties can be resolved at the commissioners' hearing, the expense of litigation is much less than that which would be incurred in the course of a jury trial. The Legislature therefore intended the commissioners' hearing to be meaningful, particularly for the property owner.
*269 N.J.S.A. 20:3-12(b) requires in part that one of the three commissioners "shall be an attorney, admitted to practice in this State for at least 10 years, who shall preside at all hearings and rule on all questions of evidence and procedure, subject to a review by a majority of the commissioners." Sub-paragraph (c) provides that "[t]he conduct of hearings shall be governed by the rules of evidence except that testimony as to comparable sales shall be considered an exception to the hearsay rule." It is therefore expected that "evidence" will be produced at the commissioners' hearing. The State's attempt here to present no more than the dollar amount of its offer, expressly condemned by the Eminent Domain Revision Commission, did not constitute the presentation of "evidence". It was a "net opinion", not admissible under our rules of evidence, Buckelew v. Grossbard, 87 N.J. 512 (1981), and was offered through a non-expert, and therefore unqualified, witness.
N.J.S.A. 20:3-12(f) provides in part:
Commissioners may inspect the property being condemned, and shall so inspect when requested by any party, and in addition, when requested by any party, Commissioners shall inspect two comparable sales testified to by said party.
Thus, it is expected that there will be testimony as to comparable sales, at least when such sales are relied upon by either party in fixing value. Otherwise, the commissioners could not inspect "two of the comparable sales" when requested.
N.J.S.A. 20:3-12(e), the portion of the statute under review, says:
At the hearing, the condemnor shall proceed first to offer proof of the nature and extent of the taking, and its opinion of the compensation payable by reason thereof.
Neither this proviso nor any other part of the Act requires the condemnee to offer proof of any kind. Further, N.J.S.A. 20:3-13(a) indicates that the defendant, subject to the loss of the right to appeal, need not appear at a commissioners' hearing. It provides in part that "[a]ny party who has appeared at the hearings of the commissioners, either personally or through an attorney, may appeal from the award of the commissioners." *270 The statutory scheme therefore requires the State to appear and present proof, even when the defendant does not appear. It requires no less when the defendant is present, whether or not he presents evidence, however unconvincing that evidence may be. The State's proof, however, must consist at least of its appraisal information. The Legislature must have intended the commissioners to have more than a mere dollar opinion of value upon which to base an award.
If the State is not required to make full disclosure, realistically defined, what lesser disclosure could the Legislature have intended? For the reasons discussed above, the bare presentation of the ultimate, net opinion reflecting the dollar value relied upon by the State is not acceptable. What reasonable line can be drawn between full disclosure and mere dollar value? Should the State's expert be permitted to identify the comparable sales without being obliged to reveal the adjustments made to relate them to the condemned property? This would make little sense; it would deny significant cross-examination while depriving the comparables of any relevance. When the State's expert has used several approaches to value and has relied upon all of them to support his opinion, should he be permitted to testify to only one approach? This would be clearly wrong since part of the basis for the opinion would be missing. Speculation as to any other possible alternative to full disclosure is not rewarding. Any and every such alternative would permit the State to present less than the entire basis for its opinion of value, consequently inviting the suspicion that always accompanies a partial disclosure. Furthermore, under the rules of evidence it is likely that such an opinion would not be admissible. The property owner and the commissioners are entitled to much more than a partial disclosure. They are entitled to all of the information employed by the State in reaching its opinion as to value.
The State believes that the defendant is acting improperly, using the commissioners' hearing as an opportunity for *271 discovery of the State's case without revealing his own position. Neither our statutes nor our Rules support that contention. True, R. 4:73-11(a) & (b) and N.J.S.A. 20:3-12(d) and 3-13(c) deny the parties' right to any usual discovery proceedings. They require only that the parties exchange written appraisal reports of any person who will be called to testify as a valuation expert and lists of comparable sales intended to be introduced at the commissioners' hearing and any subsequent trial. They do not, however, prevent either the State or the defendant from using the commissioners' hearing for discovery purposes.
Arguably, the defendant's use of the commissioners' hearing for such purposes is entirely appropriate. It is a practical approach, designed by the Legislature to accommodate the condemnee whose property has been taken without his consent. The hearing represents his first opportunity to hear the State's expert, his first opportunity to cross-examine that expert, his first opportunity to determine, in depth, the validity of the State's position. The property owner need not incur the expense of hiring an expert or an attorney for the purpose of the hearing. He may or may not testify. He is given the opportunity to attend the hearing, pro se, to learn all that he can about the State's case and then decide whether or not to accept the State's offer. This is an important right. In some cases, the amount of money involved is very small, too small to warrant the employment of an expensive expert witness. It is a fair thing, therefore, to provide a condemnee with an inexpensive, informal hearing in which he can participate for the purpose of testing the State's offer.
In State v. Meisler, 128 N.J. Super. 307 (Law Div. 1974), the court interpreted the "reasonable disclosure" requirement of N.J.S.A. 20:3-6, holding that the State need advise the defendant only of its dollar offer, and its distribution between the value of the property taken and damages attributed to the remainder. It held that written appraisals need not be submitted to the owner. That opinion did not deal with practice at a commissioners' hearing. However, it is contrary to some of *272 the conclusions reached here. To that extent, I believe that Meisler is wrong.
Every reasonable approach to the language of N.J.S.A. 20:3-12(e), whether based upon history, logic, language or practical result, requires the conclusion that the State's "opinion of the compensation payable" which must be offered, means much more than a bare dollar statement. It requires full disclosure by the State of all facets of its opinion. Its expert must present testimony as to the comparable sales upon which it relies, the final adjustments made with respect to those sales and its final appraisal figure for the premises taken. Information is to be given generously, not grudgingly. Nothing less will satisfy the statute and the State's constitutional obligation to pay just compensation to the owners of property taken in eminent domain procedures.