STATE OF NEW JERSEY, BY COMMISSIONER OF TRANSPORTATION, PLAINTIFF, v. DONATO D'ONOFRIO, II, ET AL., DEFENDANTS.

Superior Court of New Jersey
Law Division Ocean County

Decided April 3, 1989.

*George P. Ljutich,* Deputy Attorney General, for plaintiff State of New Jersey, By Commissioner of Transportation (*Peter N. Perretti, Jr.,* Attorney General).

*John H. Buonocore,* Jr., for defendant Donato D'Onofrio, II; (*McKirdy and Riskin,* attorneys).

SERPENTELLI, A.J.S.C.

*N.J.S.A.* 20:3–6 provides, with certain exceptions, that no action to condemn shall be instituted unless the condemnor has engaged in bona fide negotiations with the condemnee. Those negotiations must include a reasonable disclosure of the manner in which the amount of offered compensation was calculated. At issue here is the scope of the required disclosure. Does the term "reasonable disclosure" compel the condemnor to give the condemnee a copy of all appraisals which it has obtained for the purposes of making its condemnation offer?

After negotiations to acquire defendant's [1] property proved fruitless, the plaintiff filed a complaint in condemnation and thereafter brought an order to show cause for the appointment of commissioners and judgment confirming plaintiff's right to condemn. The defendant's answer raised numerous objections to the entry of the order. All of those objections have since been resolved except for the issue of plaintiff's obligation to divulge all appraisals in its possession. The plaintiff concedes that it has more than one appraisal but is only willing to provide its approved appraisal.[2] The defendant asserts a right to have the complaint dismissed because the plaintiff failed to give him a copy of all the appraisals.

The scope of required disclosure as part of pre-litigation bona fide negotiations has expanded dramatically in recent years. There was a time when the condemnor could merely make an offer without disclosing how the figure was developed. The 1965 report of the Eminent Domain Revision Commission recognized this evil. The Commission concluded that if fair offers were made based upon appropriate data disclosed to the owner, many attempted acquisitions would be completed amicably without subjecting the condemnor or the owner to expense and delay. It recommended that no taking should be instituted until bona fide negotiations, which include reasonable disclosure of the basis of the offer, had failed. Eminent Domain Revision Commission, Report, at 16–17 (1965).

Those recommendations were embodied in *N.J.S.A.* 20:3–6, which provides in part:

> [N]o action to condemn shall be instituted unless the condemnor is unable to acquire ... title or possession through bona fide negotiations with the prospective condemnee, which negotiations shall include an offer in writing by the condemnor to the prospective condemnee ... setting forth ... the compensation

---

[1] The reference to defendant refers to Donato D'Onofrio, II; all other defendants have defaulted.

[2] *N.J.S.A.* 20:3–6 requires that the agency's offer be no less than its "approved appraisal" of fair market value.

offered to be paid and a reasonable disclosure of the manner in which such offered compensation has been calculated, and such other matters as may be required by the rules. Prior to such offer the taking agency shall appraise said property and the owner shall be given an opportunity to accompany the appraiser during inspection of the property.

The mandate of the statute is also reflected in *R.* 4:73–1, which provides in part:

Unless the court for good cause orders otherwise, reasonable disclosure by the condemnor shall include furnishing the condemnee with the map and a description of land to be acquired and identity of improvements to be acquired, if any; a statement of the full fair market value including a description of the appraisal valuation method or methods relied upon as well as a breakdown of the appraised value allocated to the land to be acquired, and improvements to be acquired, if any; and data concerning comparable sales or leases relied upon in determining the amount of compensation ... and any unusual factors known to the condemnor which may affect value.

Neither the statute nor the rule explicitly require the condemnor to reveal any appraisal. The question of whether it is obligated to reveal its approved appraisal was addressed in dicta in *State v. Siris*, 191 *N.J.Super.* 261 (Law Div.1983). Judge Haines said: "My reading of the statute requires the State to disclose its *complete* appraisal information during pre-litigation negotiations." *Id.* at 268; emphasis in original. That statement was dicta because the application to the court in *Siris* was made after the condemnation commissioners started their hearing to determine value. The pre-complaint negotiations had already been completed so that the question did not arise within the context of reasonable disclosure as part of bona fide negotiations. However, in *State v. Hancock*, 208 *N.J.Super.* 737 (Law Div.1985), *aff'd.*, 210 *N.J.Super.* 568 (App.Div. 1985), Judge Haines made the *Siris* dicta the holding by deciding that the statute requires disclosure of the condemnor's complete appraisal information during *pre-litigation* negotiations. *Id.* at 742. The Appellate Division, affirming *Hancock* and expressly approving the *Siris* opinion, held that "In the field of condemnation, 'government has an overriding obligation to deal forthrightly and fairly with property owners.'" 210 *N.J.Super.*, at 570; citation omitted.

The *Hancock* requirement that the state disclose its "complete appraisal information" is not dispositive of the issue before this court. Since *Hancock* involved only one appraisal, the state has read that decision to require it to disclose its approved appraisal but not any other appraisals it may possess. Thus, the essential issue in this case is whether a disclosure is adequate if it includes only the approved appraisal or, put another way, whether it must include all appraisals which have been obtained for the purposes of making the condemnation offer.

In eminent domain cases our courts have shown a special solicitude for property owners. In *F.M.C. Stores Co. v. Morris Plains*, 100 *N.J.* 418 (1985), the Supreme Court declared that a condemnor:

> may not conduct itself so as to achieve or preserve *any* kind of bargaining or litigational advantage over the property owner. Its primary obligation is to comport itself with compunction and integrity, and in doing so government may have to forego the freedom of action that private citizens may employ in dealing with one another. [*Id.* at 427; emphasis added].

The state argues that, contrary to the suggestion that disclosure of all appraisals will promote amicable resolution, it may in fact encourage litigation. Implicit in this argument is the assumption that the non-approved appraisal or appraisals will usually be higher than the approved appraisal upon which the state's offer is based. The state contends that a condemnee will not accept what may be the state's perfectly valid reasons for approving the lower appraisal and, therefore, will never accept an offer less than the state's highest appraisal. The state's position is speculative at best. It may underestimate the capacity of prospective condemnees to be reasonable once they are assured that they have received all of the valuation information which could help them decide whether they should accept the offer. It is possible that full disclosure will convince the property owner to avoid the expensive performance and uncertain denouement of the judicial drama.

However, even if full disclosure of all appraisals does not result in settlement, important public interests are served. The state, as guardian of the public fisc, must be accountable for the funds it spends. The more the state shrouds its decision-making process, the more the accountability is blunted. As Judge Haines noted in *Siris*, there is no sound reason for a veil of secrecy which is contrary to the interests of both the condemnee and the citizens in general who pay the cost of condemnation. Covertness conflicts with the legislative intent of candor and fairness vividly reflected in the report of the Eminent Domain Revision Commission and the statutes which embodied its recommendations.

It must be remembered that the power to take property through eminent domain is one of the most intrusive aspects of sovereignty. Historically, land has been both the basis and symbol of wealth and still occupies a special place in our law. Real estate is also frequently irreplaceable because of its uniqueness. Thus, the state should not be heard to complain when the property owner seeks the fullest vindication of the rights of ownership. If the judicial process of determining just compensation is equitable, the state loses nothing by disclosing additional information. It merely satisfies the legislative objective to assure that every reasonable consideration is given to a property owner before this invasive power is exercised. Conversely, if the obligation to disclose all appraisals puts the state at an unfair disadvantage, it has the power to change the rules by amending the statute.

The state's refusal to disclose all information which may affect value may not be in bad faith, but it certainly does not satisfy the affirmative good faith obligation mandated by the statute. No official policy directs the state to be miserly in giving meaning to the term "reasonable disclosure." Quite to the contrary, the state should err on the side of openness and leave to the Legislature the decision of whether its obligation to

disclose should be constricted by statutory amendment.[3]

Rule 4:73–1, quoted above, became effective January 2, 1986. According to the plaintiff, that rule has precisely defined the scope of disclosure mandated by the statute. The state's position suggests either that the court rule amends the statute or that the rule is the most authoritative interpretation of the statute. Either way, the argument fails. First, on its face, the rule is not exhaustive. It uses the phrase "shall include" rather than "shall consist of" or a similar phrase. Second, Rule 4:73–1 cannot restrict the requirements of the Eminent Domain Law. Finally, the amendment of the rule more than fifteen years after the adoption of the law is hardly a contemporaneous construction. It is evident that the purpose of the amendment was to clarify the vague standard contained in the predecessor rule and to specify the minimum contents of the condemnation complaint. The Appellate Division in *Hancock* recognized that the new rule does not deal with pre-litigation disclosure. 210 *N.J.Super.*, at 570. Therefore, *Hancock* requires more disclosure before the filing of the complaint than the rule requires be contained in the complaint. The rule merely deals with the sufficiency of the contents of the complaint. The statute requires reasonable disclosure as a precondition to filing of the complaint. In a related argument, the state submits that the statute's use of the word "reasonable" restricts the extent of "disclosure." This decision directs only the disclosure of appraisals, not everything the state knows or has in its files.

The state provides two other justifications for its opposition. First, it asserts that no existing law requires the condemnor to provide such expansive disclosure. What has been said above adequately addresses that objection. If the burden of disclosure has not been placed expressly, it is there nonetheless when the law is given its intended meaning. Second, the state

---

[3]For example, the state could easily read the statutory requirement to disclose the "manner" of calculation to mean that the rejection of one appraisal and acceptance of another is part of the "manner" of calculation.

suggests that it may not get additional appraisals if it is obligated to reveal them. Nothing mandates that the state get a second appraisal. However, it is assumed that the state will act responsibly in an effort to make an appropriate fair market offer as required by the statute. The state wants to be sure that it is not paying too much or too little. Not every case would require a second appraisal. That decision is left to the judgment of the state as part of its duty to protect both the public interest and private rights.

On the other hand, there are numerous benefits flowing from the requirement of complete disclosure of all appraisals. The property owner is brought closer to an equal bargaining position with the taking authority. The right of the owner to accompany the condemnor's appraiser during site inspection is made more meaningful if the resulting appraisal is revealed so that the owner can verify that it reflects what was seen during the site inspection. Further, the obligation to disclose all appraisals may encourage the state to make a fairer offer in the first instance, thereby eliminating some of the strategic posturing that occurs on both sides before a compromise can be reached.

Therefore, the court holds that the reasonable disclosure aspect of bona fide negotiations requires the condemnor to provide the prospective condemnee with all appraisals in its possession which have been obtained for the purposes of making its condemnation offer. Although the defendant is entitled to have the complaint dismissed, he is willing instead to accept prompt disclosure of the appraisals. The court so directs.