DeALMEIDA, P.J.T.C.
This is the court’s opinion with respect to plaintiff Seaboard Landing, LLC’s (“Seaboard”) request for relief pursuant to N.J.S.A. 54:51A-8, commonly known as the Freeze Act. Specifically, Seaboard requests entry of Judgments reducing the assessments on the subject property for tax years 2009, 2010 and 2013. For the reasons more fully explained below, the court concludes that Seaboard is entitled to Freeze Act relief for tax year 2013. The court also concludes, however, that Freeze Act relief is not authorized for tax years 2009 and 2010 and that neither the square corners doctrine nor the Uniformity Clause of the State Constitution require that Freeze Act relief be granted for those tax years.
I. Findings of Fact and Procedural History
The following findings of fact are based on the evidence and testimony adduced at trial and submitted with respect to Seaboard’s application for Freeze Act relief.
The subject property consists of 10.542 vacant acres along the Delaware River at the end of West Main Street in defendant Penns Grove Borough, Salem County. The property is designated in the records of the municipality as Block 57, Lot 1 (the “subject property”).
From 2000 to 2007, the property was owned by Fenwick Commons, LLC (“Fenwick”), which obtained the property, along with several other parcels of vacant waterfront land and riparian rights, with the intention of developing “The Riverwalk at Penns Grove,” a 191,000-square-foot, riverfront entertainment center with retail, dining, hotel and marina facilities. The proposed project included a 30 feet by 770 feet walkway along the Delaware River secured by a decorative bulkhead. The walkway was intended to accommodate ear shows, craft shows and public gatherings, complement *611 the proposed commercial buildings, and provide public access to the waterfront. The bulkhead both supports the walkway and protects the upland parcel from the river.
During construction of the bulkhead and walkway, Seaboard purchased the subject property and development rights from Fenwick. As of November 1, 2007, construction of the bulkhead and walkway was complete.[1]
On or about October 10, 2008, the municipal tax assessor issued added assessments for Block 57, Lot 1 in the amount of $1,250,000 attributable to the improvements. One added assessment was prorated for the last two months of tax year 2007 ($208,333) and the other applied for the entire tax year 2008 ($1,250,000).[2]
The Chapter 123 average ratio for the municipality for tax year 2007 is 60.71. When the average ratio is applied to the omitted added assessment, the implied equalized value of the full omitted added assessment for tax year 2007 is $2,058,969. The implied equalized value of the two-month prorated assessment for 2007 is $343,162.
The Chapter 123 average ratio for the municipality for tax year 2008 is 54.00. When the average ratio is applied to the omitted added assessment, the implied equalized value of the omitted added assessment for tax year 2008 is $2,314,815.
Prior to December 1, 2008, Seaboard filed an appeal of the added assessments with the Salem County Board of Taxation. The county board dismissed the appeals because Seaboard had not paid the taxes attributable to the omitted added assessments.
On January 12, 2009, Seaboard filed two Complaints in this court, one challenging the two-month, pro-rated omitted added *612 assessment for tax year 2007 and one challenging the omitted added assessment for tax year 2008.[3]
A districtwide revaluation was implemented in the municipality for tax year 2009. For that tax year, the subject property was assessed as follows:
Land $2,113,100
Improvements $1,250,000
Total $3,363,100
Seaboard did not file an appeal of the 2009 assessment.
The assessment set during the 2009 revaluation remained on the subject property for tax year 2010. Seaboard filed an appeal of the 2010 assessment with the county board of taxation. The county board, at Seaboard’s request, entered Judgment dismissing the appeal without prejudice. In a letter to the county board, Seaboard’s counsel represented that Seaboard intended to appeal the dismissal without prejudice to this court so that the tax year 2010 appeal could be joined with the pending appeals concerning the omitted added assessments. However, no Complaint challenging the 2010 assessment was filed with this court.
For tax year 2011, the subject property remained assessed at $3,363,100. The Chapter 123 average ratio for the municipality for tax year 2011 is 98.69. When the average ratio is applied to the assessment, the implied equalized value of the subject property for tax year 2011 is $3,407,741.
On March 31, 2011, Seaboard filed a Complaint challenging the 2011 assessment.
*613 For tax year 2012, the property remained assessed at $3,363,100. The Chapter 123 average ratio for the municipality for tax year 2012 is 100.87%.
Seaboard challenged the 2012 assessment before the county board, which affirmed the assessment in a Judgment issued on May 30, 2012.
On June 8, 2012, Seaboard filed a Complaint in this court challenging the county board Judgment with respect to tax year 2012.[4]
For tax year 2013, the subject property remained assessed at $3,363,100. The Chapter 123 average ratio for the municipality for tax year 2013 is 103.39%.
Seaboard challenged the 2013 assessment before the county board of taxation. The board subsequently dismissed the appeal for failure to pay taxes. See N.J.S.A. 54:3-27.
On July 3, 2013, Seaboard filed a Complaint in this court challenging the county board Judgment with respect to tax year 2013. On August 22, 2014, after issuing a bench opinion, the court granted the municipality’s motion to dismiss the 2013 Complaint for failure to pay taxes pursuant to N.J.S.A. 54:51A-1(b). An appeal of the court’s Judgment with respect to tax year 2013 is pending in the Superior Court, Appellate Division.
*614 On June 15, 2015, the court held a trial with respect to Seaboard’s challenges to the prorated two-month omitted added assessment for 2007, the full-year omitted added assessment for tax year 2008, and the assessments for tax years 2011 and 2012.
Each party presented a licensed real estate appraiser as an expert witness at trial. Seaboard’s expert offered the opinion that the subject property, including both the vacant land, the walkway and the bulkhead, had a true market value of $876,000 as of October 1, 2011, the valuation date for tax year 2012. He offered no detailed analysis of the true market value of the subject property as of the November 1, 2007 date of the completion of the improvements for purposes of the omitted added assessments or as of October 1, 2010, the valuation date for tax year 2011. The totality of his written analysis for those years was as follows:
We note that we have been asked to comment on the value under appeal for prior years, including 2008, 2009 and 2011. It would be our opinion that the value conclusion would be the same for these prior years in question.
Despite the obvious shortcomings in the opinion of Seaboard’s expert, at least with respect to tax years other than 2012, the municipality did not at the close of Seaboard’s case-in-chief move to dismiss the Complaints for a failure to overcome the presumption of validity attached to the assessments. See Pantasote Co. v. City of Passaic, 100 N.J. 408, 413, 495 A.2d 1308 (1985); MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J.Tax 364, 373 (Tax 1998). This is an important fact in the analysis of Seaboard’s square corners argument.
The municipality’s counsel explained at oral argument on the Freeze Act application that she did not move to dismiss the Complaints at the close of Seaboard’s ease-in-chief because she was in possession of an expert appraisal report commissioned by the municipality that proffered the opinion that the subject property had a true market value well below the challenged assessments as of the relevant valuation dates for all tax years at issue, as well as the tax years 2009, 2010 and 2013, which were not before the court. The opinion of the municipality’s expert, if found credible by the court, would warrant reductions in all of the assessments under review. According to the municipality, its *615 square corners obligation to Seaboard, if any existed, was fulfilled when it refrained from seeking dismissal of the Complaints and instead affirmatively presented evidence in support of the reduction of the assessments for the tax years before the court.
In a July 24, 2015 written opinion, the court concluded that the opinions of value offered by Seaboard’s expert lacked credibility and were, in large part, net opinions. The court also concluded that the opinions of value offered by the municipality’s expert were credible. The court adopted the opinions of the municipality’s expert with minor adjustments, resulting in significant reductions of all assessments before the court.
With respect to the omitted added assessments, the court concluded that the true market value of the subject property with improvements upon completion of the walkway and bulkhead on November 1, 2007 was $1,475,000. After applying the formula in N.J.S.A. 54:4-63.3 to determine the appropriate omitted added assessments, see Borough of Fort Lee v. Invesco Holding Corp., 6 N.J.Tax 255, 257 (App.Div.), certif. denied, 94 N.J. 606, 468 A.2d 238 (1983), the court concluded that the taxable value of the omitted added assessment for the last two months of tax year 2007 was $113,455. Application of the average ratio for the municipality for tax year 2007 to the value conclusion resulted in entry of a Judgment reducing the added assessment for the last two months of 2007 to $68,879.
The July 24, 2015 Judgment for the tax year 2007 two-month omitted added assessment provides in relevant part:
Added Improvements (12 mos.): $413,272
Number of Months Prorated: 2
Prorated Assessments: $ 68,879
The statutory formula in N.J.S.A. 54:4-63.3 resulted in a determination that the assessable value of the added assessment for all of 2008 was $314,300. The July 24, 2015 Judgment for the tax year 2008 omitted added assessment provides in relevant part:
*616 Added Improvements (12mos.): $314,300
Number of Months Prorated: 12
Prorated Assessments: $314,300
With respect to tax years 2011 and 2012, the court concluded that the true market value of the subject property with improvements on the relevant valuation dates was $1,475,000. Application of the average ratio for the municipality for tax year 2011 resulted in the entry of a July 24, 2015 Judgment setting the tax year 2011 assessment on the subject property as follows:
Land $ 900,000
Improvements $ 560,000
Total $1,460,000
Application of the average ratio for the municipality for tax year 2012 resulted in the entry of a July 24, 2015 Judgment setting the tax year 2012 assessment on the subject property as follows:
Land $ 900,000
Improvements $ 575,000
Total $1,475,000
No appeal was taken from the July 24, 2015 Judgments, which are now final.
On August 6, 2015, Seaboard moved for relief under the Freeze Act. Seaboard requests, in effect, that the July 24, 2015 Judgment with respect to the omitted added assessment for tax year 2008 be applied to reduce the assessments on the subject property for tax years 2009 and 2010. In addition, Seaboard requests that the July 24, 2015 Judgment with respect to tax year 2012 be applied to reduce the assessment on the subject property for tax year 2013.
Seaboard acknowledges that the Freeze Act contains express language precluding its application in a tax year in which a districtwide revaluation was implemented and any subsequent year. This provision of the statute would preclude application of *617 the tax year 2008 Judgment to reduce the assessments in tax years 2009 and 2010, in light of the fact that the municipality implemented a districtwide revaluation for tax year 2009. Seaboard argues, however, that both the square corners doctrine, see F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426-27, 495 A.2d 1313 (1985), and the Uniformity Clause of the State Constitution, N.J. Const. Art. VIII, sec. 1, par. 1(a), require Freeze Act relief be granted with respect to tax years 2009 and 2010 despite the unequivocal language of the statute.
According to Seaboard, the reason that the Freeze Act ordinarily does not apply to a year in which a districtwide revaluation has been implemented is because it is presumed that all property will be assessed at 100% of value in the revaluation year. Yet, in this instance, evidence was introduced at trial establishing that the assessment on the subject property in the revaluation year exceeds the property’s true market value by more than 50%. That evidence was introduced through the municipality’s own expert, whose opinion the court adopted for tax years before and after the revaluation year. In light of these unusual circumstances, Seaboard argues, application of the Freeze Act’s revaluation-year limitation would not fulfill the intent of the Freeze Act, would give the municipality an unfair litigational advantage, and would be unconstitutional.
The municipality opposes Seaboard’s application for relief. Relying on the plain language of the Freeze Act, the municipality argues that the tax year 2008 Judgment cannot be applied to reduce the assessments for tax years 2009 or 2010 because of the 2009 revaluation. In addition, the municipality argues that it fulfilled its obligation to turn square corners in this matter and that the Uniformity Clause is not offended by application of the revaluation-year limitation in the Freeze Act. The municipality also argues that: (1) Freeze Act relief is not authorized for tax year 2010 because Seaboard filed an appeal for that year with the county board of taxation, which affirmed the assessment with no subsequent Tax Court appeal; and (2) that Freeze Act relief is not authorized for tax year 2013 because Seaboard’s Complaint for *618 that year was dismissed by this court for failure to pay taxes pursuant to N.J.S.A. 54:51A-1(b).
The court heard oral argument from counsel on Seaboard’s Freeze Act application.
II. Conclusions of Law
The Freeze Act, N.J.S.A. 54:51A-8, provides in pertinent part as follows:
Conclusiveness of judgment; changes in value; effect of revaluation program. Where a judgment not subject to further appeal has been rendered by the Tax Court involving real property, the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date. The conclusive and binding effect of the judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation or complete reassessment of all real property within the district has been put into effect. If as of October 1 of the pretax year, the property in question has been the subject of an addition qualifying as an added assessment ... the conclusive and binding effect of such judgment shall terminate with said pretax year.
The Freeze Act protects taxpayers who have successfully prosecuted a challenge to an assessment on their property from “repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value____” City of Newark v. Fischer, 8 N.J. 191, 199-200, 84 A.2d 547 (1951). The statute is self-executing and “[o]nce a tax assessor becomes aware of a judgment freezing the assessment at issue for the next two tax years, ‘the mandatory and self-executing nature of the Freeze Act requires the assessor to comply.’” Grandal Entrps., Inc. v. Borough of Keansburg, 292 N.J.Super. 529, 536-37, 679 A.2d 193 (App.Div.1996)(quoting Clearview Gardens Assocs. v. Township of Parsippany-Troy Hills, 196 N.J.Super. 323, 329, 482 A.2d 523 (App.Div.1984)). A taxpayer need not file an appeal for the tax year for which Freeze Act protection is sought. Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 167, 110 A.2d 110 (1954). Instead, the protection of the Act “may be invoked at the option of the taxpayer on motion for supplementary relief to the Tax Court under the caption of the Tax Court *619 judgment for the base year to which the Freeze Act application is sought.” R. 8:7(d).
A. Freeze Act Relief for Tax Years 2009 and 2010.
Statutory construction begins with the statute’s plain language. Merin v. Maglaki, 126 N.J. 430, 434, 599 A.2d 1256 (1992). “A statute should be interpreted in accordance with its plain meaning if it is clear’ and unambiguous on its face and admits of only one interpretation.” Board of Educ. v. Neptune Twp. Educ. Ass’n, 144 N.J. 16, 25, 675 A.2d 611 (1996)(quotations omitted). “[T]he best approach to the meaning of a tax statute is to give to the words used by the Legislature their generally accepted meaning, unless another or different meaning is expressly indicated.” Public Serv. Elec. & Gas Co. v. Township of Woodbridge, 73 N.J. 474, 478, 375 A.2d 1165 (1977)(quotations omitted); accord Waksal v. Director, Div. of Taxation, 215 N.J. 224, 232, 71 A.3d 878 (2013). Courts also should be “guided by the legislative objectives sought to be achieved by enacting the statute.” Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572, 39 A.3d 177 (2012)(citing LaFage v. Jani, 166 N.J. 412, 431, 766 A.2d 1066 (2001)). Statutory construction must be applied to “‘effectuat[e] the legislative plan as it may be gathered from the enactment read in full light of its history, purpose and context.’” Koch v. Director, Div. of Taxation, 157 N.J. 1, 7, 722 A.2d 918 (1999)(quoting State v. Haliski, 140 N.J. 1, 9, 656 A.2d 1246 (1995)).
In addition, when determining the meaning of statutes,
words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.
[N.J.S.A. 1:1-1.]
Reading N.J.S.A. 54:51A-8 in context and applying the “ordinary and well-understood meaning” of the words in the Freeze Act, the conclusive and binding effect of the tax year 2008 Judgment “shall terminate with the tax year immediately preceding” tax year 2009, “the year in which a program for a complete revaluation or complete reassessment of all real property within *620 the district has been put into effect.” The conclusive and binding effect of the tax year 2008 Judgment terminated in 2008, the tax year before the tax year 2009 revaluation. The 2008 Judgment, therefore, cannot be the basis for Freeze Act relief for tax years 2009 and 2010.
The court rejects Seaboard’s argument that a literal reading of the Freeze Act in this instance undermines the intended purpose of the statute. According to Seaboard, the statutory provision at issue is intended to preclude Freeze Act relief when a districtwide revaluation results in the assessment of the relevant parcel at 100% of true market value. Here, according to Seaboard, this purpose is not fulfilled, as it is clear from the evidence adduced at trial and from the court’s conclusions of true market value for the years under appeal that the 2009 revaluation resulted in an assessment on the subject property far in excess of its true market value. While Seaboard’s argument has surface appeal, a careful analysis reveals that it is not supported by law.
The Freeze Act does not contain language qualifying the revaluation limitation in the fashion suggested by Seaboard. While it is the goal of a districtwide revaluation to assess all parcels at 100% of true market value, Keane v. Township of Monroe, 25 N.J.Tax 479, 493 (Tax 2010), that objective is not necessarily obtained in every instance. This is why taxpayers and taxing districts are afforded the right to file an appeal of assessments placed on property in a revaluation year. See N.J.S.A. 54:3-21. It is not unusual for the county boards of taxation or this court to reduce an assessment set during a revaluation year.
It is entirely reasonable to conclude that the Legislature was aware that an assessment set during a revaluation may or may not reflect 100% of a property’s true market value. The Legislature may well have viewed a distrietwide revaluation as a sufficiently significant event, in and of itself, to warrant a limitation of Freeze Act relief, given the fact that new assessments are set during a revaluation and a ratio presumed to be 100% becomes effective for the taxing district. By affording the property owner and taxing district the statutory right to challenge an assessment set during a *621 revaluation, the Legislature provided a readily accessible and efficient process for correcting erroneous assessments set during a revaluation. Had the Legislature intended for Freeze Act relief to terminate only when a revaluation results in an assessment accurately reflecting true market value it could easily have included such language in N.J.S.A. 54:51A-8. It did not do so.
In addition, the Freeze Act has no provision authorizing the exercise of judicial discretion to determine the true market value of property in a freeze year. The Freeze Act instead calls for rote application of the assessments set in the base year Judgment to the freeze years. The court cannot, for example, determine whether the assessment in the base year Judgment falls within the common level range applicable to the taxing district in the freeze year, see N.J.S.A. 54:51A-6a, or determine whether market forces would require an adjustment to the assessment in the base year Judgment. Seaboard asks the court to, in effect, rewrite N.J.S.A. 54:51A-8 to include language terminating the eonclusiveness of a Judgment only where the Tax Court undertakes an independent analysis of evidence and determines that the property at issue was assessed at 100% of its true market value in a districtwide revaluation. This approach would not only contradict the plain language of the statute but also introduce the exercise of judicial discretion to determine value in a tax year in which no appeal was filed. Instead of getting the benefit of its successful appeal in tax year 2008, Seaboard seeks what would in effect be a review and analysis of the tax year 2009 assessment, even though Seaboard did not file an appeal for that tax year.
The tax year 2008 Judgment at issue here highlights the shortcoming in Seaboard’s argument. The Judgment concerns only the omitted added assessment for improvements for tax year 2008. It sets a prorated assessable value of $314,300, which reflects not the true market value of the added improvements, but the figure resulting from application of the 54.00 average ratio for the municipality for tax year 2008 to the true market value of the improvements. In addition, the 2008 Judgment does not contain an assessable land value. To apply the 2008 Judgment to tax year 2009 with no exercise of judicial discretion would be meaningless, *622 given that the 2009 assessment contains both an improvement value and a land value and is based on a presumed ratio of 100%. The relief requested by Seaboard would require a judicial determination of land value as of October 1, 2008, as well as recalculation of the improvement assessment listed in the tax year 2008 Judgment to reflect 100% of true market value. This court does not have the authority to contort the plain language of the Freeze Act in the manner necessary to accomplish this result.
Recognizing the significant statutory obstacles to its position, Seaboard argues that both the square corners doctrine and the Uniformity Clause of the State Constitution require that the court overlook the unequivocal language of the Freeze Act and award relief for tax years 2009 and 2010. The court is not convinced by Seaboard’s argument.
Our Supreme Court examined the square corners doctrine in the local property tax context in F.M.C. Stores Co., supra. The Court’s directive was clear:
We have in a variety of contexts insisted that governmental officials act solely in the public interest. In dealing with the public, government must “turn square corners.” Gruber v. Mayor and Twsp. Com. of Raritan Tp., 73 N.J.Super. 120 [179 A.2d 145] (App.Div.), aff'd., 39 N.J. 1 [186 A.2d 489] (1962). This applies, for example, in government contracts. See Keyes Martin v. Director, Div. of Purchase and Property, 99 N.J. 244 [491 A.2d 1236] (1985). Also, in the condemnation field, government has an overriding obligation to deal forthrightly and fairly with property owners. See Rockaway v. Donofrio, 186 N.J.Super. 344 [452 A.2d 694] (App.Div.1982); State v. Siris, 191 N.J.Super. 261 [466 A.2d 96] (1983). It may not conduct itself so as to achieve or preserve any kind of bargaining or litigational advantage over the property owner. Its primary obligation is to comport itself with compunction and integrity, and in doing so government may have to forego the freedom of action that private citizens may employ in dealing with one another.
[100 N.J. at 426-427, 495 A.2d 1313.]
The currency of the square corners doctrine in the area of taxation was highlighted by the Court. The “statutory provisions governing substantive standards and procedures for taxation, including the administrative review process, are premised on the concept that government will act scrupulously, correctly, efficiently, and honestly. It is to be assumed that the municipality will exercise its governmental responsibilities in the field of taxation conscientiously, in good faith and without ulterior motives.” Id. at 427, 495 A.2d 1313.
*623 Here, Seaboard argues that under the square corners doctrine the municipality should be barred from opposing Seaboard’s application for Freeze Act relief. In support of this position, Seaboard relies on the fact that during discovery the municipality commissioned an expert appraisal report that offered the opinion that the subject property’s true market value was more than 50% lower than the equalized assessed value on the property for tax years 2009 and 2010. According to Seaboard, in light of the expert’s report, on which the municipality relied at trial and which the court found credible, the municipality is seeking an untoward litigational advantage by opposing Seaboard’s request for Freeze Act relief for tax years 2009 and 2010. It is, in Seaboard’s view, indisputable that in the absence of Freeze Act relief the property will, as a result of the municipality’s opposition to Seaboard’s application, be over-assessed for two tax years.
It is, however, the Freeze Act’s unequivocal language, and not any action by the municipality, that precludes the award of relief to Seaboard for tax years 2009 and 2010. Whether the municipality objected to Seaboard’s application or not, the court would be powerless to award Freeze Act relief for tax years 2009 and 2010. The Tax Court is a statutory court of limited jurisdiction. McMahon v. City of Newark, 195 N.J. 526, 546, 951 A.2d 185 (2008). The statutory scheme establishing this court’s jurisdiction is “one with which continuing strict and unerring compliance must be observed----” Id. at 543, 951 A.2d 185. A failure to file a Complaint challenging an assessment divests this court of jurisdiction to review that assessment. Lawrenceville Garden Apartments v. Township of Lawrence, 14 N.J.Tax 285 (App.Div.1994).
Because Seaboard did not file Complaints in this court challenging the tax year 2009 and 2010 assessments, the only statutory authority through which this court can grant relief for those years is the Freeze Act. When drafting the Freeze Act the Legislature expressly limited the court’s authority where a revaluation has been implemented. It is Seaboard’s failure to file timely tax year 2009 and 2010 Complaints and the express language of N.J.S.A. *624 54:51A-8 that precludes relief here, not any untoward action by the municipality.
Indeed, the municipality convincingly argues that it turned square corners in this matter when, at the close of Seaboard’s case-in-chief, it did not move to dismiss the Complaints for failure to overcome the presumption of validity attached to the assessments, despite the readily apparent flaws in the opinion of Seaboard’s expert. Instead, the municipality, aware that the opinion of its expert, if adopted by the court, would require a reduction in the challenged assessments, proceeded to call its expert witness to offer testimony damaging to the municipality’s position.
Nor does the court accept Seaboard’s argument that application of the Freeze Act’s express language in this case would render the statute unconstitutional as applied. As a threshold matter, Seaboard faces the difficult task of overcoming the presumptive validity that attaches to all acts of the Legislature. Our Supreme Court has recognized “the strong presumption in favor of constitutionality, and the traditional judicial reluctance to declare a statute void, a power to be delicately exercised____” Paul Kimball Hosp. v. Brick Twp. Hosp., 86 N.J. 429, 447, 432 A.2d 36 (1981) (citation omitted). “[C]ourts do not act as a super-legislature.” Newark Superior Officers Ass’n v. City of Newark, 98 N.J. 212, 222, 486 A.2d 305 (1985)(citing Burton v. Sills, 53 N.J. 86, 95, 248 A.2d 521 (1968), app. dis., 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969)). Out of respect for the democratic process and in recognition of the Legislature’s status as a coequal branch, statutes under attack are “entitled to great weight by the courts.” New Jersey Sports & Exposition Auth. v. McCrane, 119 N.J.Super. 457, 474, 292 A.2d 580 (Law Div.1971), aff'd, 61 N.J. 1, 292 A.2d 545 (1972)(quoting Roe v. Kervick, 42 N.J. 191, 229-30, 199 A.2d 834 (1964)).
Every possible presumption in favor of the constitutionality of legislative action must be extended by this court. See Holster v. Board of Trustees, 59 N.J. 60, 66, 279 A.2d 798 (1971). Hence, any party who attacks a statute must demonstrate that “there is no reasonable basis for sustaining it.” McCrane, supra, *625 119 N.J.Super. at 476, 292 A.2d 580. Only those legislative acts that are “clearly repugnant to the Constitution” should be invalidated. Newark Superior Officers, supra, 98 N.J. at 222, 486 A.2d 305; accord State v. Muhammad, 145 N.J. 23, 41, 678 A.2d 164 (1996). Where a statute’s constitutionality is “fairly debatable, courts will uphold” the law. Newark Superior Officers, supra, 98 N.J. at 227, 486 A.2d 305. If “alternative interpretations of a statute are equally plausible, the view sustaining the statute’s constitutionality is favored.” City of Jersey City v. Farmer, 329 N.J.Super. 27, 38, 746 A.2d 1018 (App.Div.)(quotations omitted), certif. denied, 165 N.J. 135, 754 A.2d 1211 (2000). “[Ordinarily legislative enactments are presumed to be valid and the burden to prove invalidity is a heavy one.” Bell v. Township of Stafford, 110 N.J. 384, 394, 541 A.2d 692 (1988). But, “when legislation impinges on a constitutionally protected right,” our Supreme Court has “looked more closely at the State’s purported justification” for the statute. Planned Parenthood v. Farmer, 165 N.J. 609, 619-20, 762 A.2d 620 (2000).
Seaboard argues that the failure to award Freeze Act relief for tax years 2009 and 2010 would violate the Uniformity Clause of the State Constitution. The provision states:
Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such real property shall be taxed at the general tax rate of the taxing district in which it is situated, for the use of such taxing district.
[N.J. Const. Art. VIII, sec. 1, par. 1(a).]
Recently, in City of Elizabeth v. 264 First Street, LLC, 28 N.J.Tax 408, 425 (Tax 2015), Judge Novin succinctly stated the purpose of the Uniformity Clause:
Our Supreme Court has long recognized the constitutional right of taxpayers to “equality of treatment in sharing the duty to pay real estate taxes.” Township of West Miford [Milford]v. Van Decker, 120 N.J. 354, 360-361, 576 A.2d 881 (1990)(quoting Murnick v. City of Asbury Park, 95 N.J. 452, 458, 471 A.2d 1196 (1984)). This “dominant principle” is intended to ensure not only an equality of treatment, but a corresponding sharing of the burden in property assessments. Regent Care Center, Inc. v. City of Hackensack, 362 N.J.Super. 403, 415, 828 A.2d 332 (App.Div.2003)(quoting Baldwin Construction Co. v. Essex County Bd. of Taxation, 16 N.J.Tax [N.J.] 329, 340, 108 A.2d 598 (1954)). Our system mandates *626 that a taxpayer be conferred “ ‘treatment commensurate with that given his fellow taxpayers within the municipality’ and that if it is not accorded [such treatment], he is entitled to a judicial or quasi-judicial remedy.” Tri-Terminal Corp. v. Borough of Edgewater, 68 N.J. 405, 409, 346 A.2d 396 (1975)(quoting In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 25, 166 A.2d 763 (1961)). The “means best designed to meet” the directives of the Uniformity Clause would necessitate district-wide revaluations or reassessments each and every year; however, such an approach is “simply not feasible.” Regent Care Center, Inc. supra, 362 N.J.Super. at 415, 828 A.2d 332 (citing Bergen County Bd. of Taxation v. Borough of Bogota, 104 N.J.Super. 499, 507, 250 A.2d 440 (Law Div.1969), aff'd ob, 114 N.J.Super. 140, 275 A.2d 158 (App.Div.1971)).
It is telling that our courts have recognized that the best method for fulfilling the Uniformity Clause’s mandate is through the districtwide revaluation process. Here, the municipality endeavored to meet its constitutional obligations by implementing a revaluation for tax year 2009. Seaboard’s property was included in that revaluation. Seaboard was afforded the same statutory right to challenge the 2009 and 2010 assessments as were all other taxpayers in the municipality. Despite having filed appeals both before and after tax years 2009 and 2010, Seaboard did not challenge the assessment placed on the property in the revaluation year or the year thereafter.
There is no mandate in the Uniformity Clause that all assessments which evidence suggests exceed true market value must be revised. The revision of an assessment is accomplished only where the statutory jurisdiction of this court is established, where credible evidence of the property’s value is accepted by the court, and where the Legislature has authorized the court to direct that the assessment be revised. There are a number of long-recognized circumstances in which an assessment which exceeds true market value will remain in place because of a taxpayer’s failure to comply with a statutory or procedural provision governing tax appeals. For example, an excessive assessment may remain in place where a taxpayer does not file a challenge to the assessment, files an untimely challenge, N.J.S.A. 54:3-21; F.M.C. Stores, supra, 100 N.J. at 425, 495 A.2d 1313; does not comply with tax payment requirements, N.J.S.A. 54:3-27; N.J.S.A. 54:51A-1(b); Dover-Chester Assocs. v. Township of Randolph, 419 N.J.Super. 184, 190, 16 A.3d 467 (App.Div.), certif. denied, 208 N.J. 338, 27 A.3d 951 (2011); does not respond to discovery requests, R. 4:23- *627 5; or fails during its case-in-ehief to overcome the presumption of validity attached to the assessment, even though the assessment may be excessive, Pantasote Co., supra. In each of these instances, the Uniformity Clause does not mandate that the assessment must be revised should evidence exist, either in the possession of the municipality or before a tribunal, that it exceeds true market value. Only where a taxpayer has successfully navigated the tax appeal process and where statutory authority to revise an assessment exists may the assessment be revised to ensure uniformity under the Constitution.
Seaboard’s request for Freeze Act relief for tax years 2009 and 2010 is denied.[5]
B. Freeze Act Relief for Tax Year 2013.
The court need not tarry long with respect to Seaboard’s request for Freeze Act relief for tax year 2013. The court’s July 24, 2015 Judgment sets a total assessment of $1,475,000 for the subject property for tax year 2012. The municipality argues that Freeze Act relief is not available for tax year 2013 because this court dismissed Seaboard’s 2013 Complaint pursuant to N.J.S.A. 54:51A-1(b) for failure to pay taxes.
The Freeze Act contains no express limitation on the availability of relief in a year in which a taxpayer’s Complaint is dismissed for failure to pay taxes pursuant to N.J.S.A. 54:51A-1(b). The absence of any such provision stands in stark contrast to the express provision discussed at length above limiting relief when a district-wide revaluation has been implemented. The Legislature demonstrated its ability to enact limits in the Freeze Act. The limitation *628 advanced by the municipality with respect to tax year 2013 was not included in N.J.S.A. 54:51A-8.
Nor does N.J.S.A. 54:51A-1(b) provide that dismissal of a Complaint for failure to pay taxes precludes Freeze Act relief for the year at issue. In this context, it is important to note that a request for Freeze Act relief does not constitute an election of remedies, precluding a taxpayers’ request for a further reduction in the Freeze Act year. Clearview Gardens Assocs., supra, 196 N.J.Super. at 330-331, 482 A.2d 523. Thus, an application for Freeze Act relief for the 2013 tax year based on a 2012 tax year Judgment and a Complaint seeking a reduction in the tax year 2013 assessment are distinct requests for relief. N.J.S.A. 54:51A-1(b) authorizes a sanction against just one of those requests for relief: the tax year 2013 Complaint.
Judgments effectuating the court’s decisions will be entered accordingly.

 Commercial development of the subject property did not take place. The walkway and bulkhead now abut a vacant lot.

 The assessments are properly characterized as omitted added assessments, given the timing of their imposition. See N.J.S.A. 54:4-63.12. This distinction is not material here.

 In addition to challenging the quantum of the assessments, Seaboard alleged that the bulkhead and walkway are exempt from local property taxes pursuant to N.J.S.A. 54:4-3.3. In a May 8, 2012 written opinion the court concluded that the property does not qualify for an exemption. The court also concluded that Seaboard's petitions of appeal should not have been dismissed by the county board for failure to pay taxes. See BDB Enterps. v. Township of Brick, 16 N.J.Tax 22 (Tax 1996)(holding that N.J.S.A. 54:4-63.11, which authorizes the filing of an appeal from an added assessment, does not contain a tax payment requirement).

 On November 24, 2014, the municipality moved to dismiss the tax years 2011 and 2012 appeals for failure to pay taxes and because Seaboard lacked standing. The motion papers established that Seaboard had been delinquent in paying taxes, resulting in the sale of a tax sale certificate in 2009. The holder of the tax sale certificate paid taxes on the property from 2009 through 2012. In 2012, Republic First Bank took title to the subject property in the name of a nominee through a deed in lieu of foreclosure because of the property owner's failure to fulfill its payment obligations on financing agreements. After transfer of title to the bank, the tax sale certificate holder continued to pay the taxes on the subject property until it filed a foreclosure action on the tax sale certificate. In a bench opinion issued on January 16, 2015, the court denied the municipality’s motion to dismiss. The court directed Seaboard to implead Republic First Bank as a plaintiff in the 2012 matter and to serve a copy of all Complaints on the holder of the tax sale certificate. On January 26, 2015, Seaboard filed an Amended Complaint in the 2012 matter, naming Republic First Bank as a plaintiff. The bank joins Seaboard's Freeze Act arguments.

 In light of the court’s conclusions, it need not decide whether Seaboard's request for Freeze Act relief for tax years 2009 and 2010 is precluded by the provision in N.J.S.A. 54:51A-8 that if as of October 1 of the pretax year the property is "subject to an addition qualifying as an added assessment ... the conclusive and binding effect of such judgment shall terminate with said pretax year." In addition, the court need not decide whether the county board of taxation’s dismissal of Seaboard’s 2010 petition of appeal without prejudice precludes Freeze Act relief for tax year 2010.